*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0220P (6th Cir.)
File Name: 00a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

No. 99-5163

JERRY LEE HOWARD,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00033—John G. Heyburn II, District Judge.

Argued: May 2, 2000

Decided and Filed: July 6, 2000

Before: MOORE and GILMAN, Circuit Judges;
McKEAGUE, District Judge.*

———————

## COUNSEL

**ARGUED:** Joseph D. Heyd, GENERAL ELECTRIC
AIRCRAFT ENGINES, LEGAL OPERATIONS, Cincinnati,
Ohio, for Appellant. Terry M. Cushing, ASSISTANT

———————

*The Honorable David W. McKeague, United States District Judge
for the Western District of Michigan, sitting by designation.

1

UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Joseph D. Heyd, GENERAL ELECTRIC AIRCRAFT ENGINES, LEGAL OPERATIONS, Cincinnati, Ohio, Joseph S. Justice, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, for Appellant. Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge. Jerry Lee Howard was convicted in 1994 of aggravated sexual assault in violation of 18 U.S.C. § 2241(a) and first-degree wanton endangerment pursuant to 18 U.S.C. § 13 (which applies state law to individuals on federal property) based on an attack that took place at Fort Knox, Kentucky. In an earlier appeal, this court concluded that Howard was held for too long prior to trial in violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174. It vacated the judgment of the district court and remanded the case for a determination of whether the indictment should be dismissed with or without prejudice.

The district court dismissed the indictment without prejudice. A second indictment was filed and Howard was again convicted of the same crimes. Howard's primary contentions in the present appeal revolve around alleged violations of the Speedy Trial Act and his Sixth Amendment right to a speedy trial in connection with both his first and second convictions. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

On May 5, 1993, Howard drove Katina Lynn Porter, the girlfriend of a male friend of his, to Crystal Lake on the Fort Knox United States Military Reservation. After

circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person.").

### D. Judicial bias

Finally, Howard contends that the district court erred in denying his motion for the district judge to recuse himself pursuant to 28 U.S.C. § 455. Howard filed this motion during his second trial, alleging that the district judge could no longer maintain the appearance of impartiality after having presided over Howard's conviction the first time around and expressing his opinion, outside of the presence of the jury, that Porter's testimony was "highly credible."

This court will affirm a district judge's decision not to recuse himself pursuant to 28 U.S.C. § 455(a) unless it constitutes an abuse of discretion. *See Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 382 (6th Cir. 1997). In *United States v. Liteky*, 510 U.S. 540 (1994), the Supreme Court explained that, "as a practical matter . . . 'extrajudicial source[s]' [are] the only bas[es] for establishing disqualifying bias or prejudice" under 28 U.S.C. § 455(a). *Id.* at 551. A predisposition acquired by a judge during the course of the proceedings will only constitute impermissible bias when "it is so extreme as to display clear inability to render fair judgment." *Id.* Howard made no showing that the district judge in the present case was influenced by any extrajudicial source whatsoever or that the district judge manifested a clear inability to render fair judgment. Furthermore, the Supreme Court in *Liteky* expressly recognized that "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand." *Id.*

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Howard asserts that the sole evidence proffered by the government to support the sexual assault charge was Porter's testimony. It is indeed true that the government was unable to produce any physical evidence—such as hairs or bodily fluids—to corroborate the charges against Howard. But the government points out that Porter's testimony was not the "sole evidence" of Howard's guilt. Several pieces of supporting, albeit circumstantial, evidence were introduced to bolster the government's case. This evidence included proof of Howard's hurried departure from the lake and his extended flight from the police, as well as testimony from eyewitnesses who observed that Porter was nearly hysterical after the alleged attack and that she showed signs of having been badly beaten.

Even assuming that Porter's testimony was the only evidence of Howard's guilt, however, this court has held that the testimony of a rape victim alone is sufficient to support a defendant's conviction. *See Gilbert v. Parke*, 763 F.2d 821, 826 (6th Cir. 1985); *see generally United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."). Porter's testimony in this case was clearly believed by the jury and provides adequate grounds for a rational trier of fact to have found the essential elements of aggravated sexual assault.

Howard also charges that the government did not adduce sufficient evidence to support the wanton endangerment charge. We disagree. Viewed in the light most favorable to the government, a rational trier of fact could easily have found that Howard intentionally tried to run over Jones with his van. Under Kentucky law, which is incorporated by 18 U.S.C. § 13, attempting to hit another person with a motor vehicle meets the definition of first degree wanton endangerment. *See* Ky. Rev. Stat. Ann. § 508.060(1) ("A person is guilty of wanton endangerment in the first degree when, under

unsuccessfully propositioning Porter, Howard beat her and forcibly performed oral sex on her at knife-point. Porter eventually managed to escape, seeking the help of three men who were fishing by the side of the lake. Two of these men happened to be off-duty police officers. As Howard started up his van, Lamar Jones, one of the officers, approached Howard's van with gun and badge drawn and ordered Howard to stop. Instead, Howard sped towards Jones in an attempt to run him over. Jones managed to step out of the way and avoid injury. He then jumped in his truck to pursue Howard, radioing for police assistance. After a fifteen-mile chase, Howard was stopped and arrested.

### B.   Procedural background

On May 19, 1993, a grand jury in the Western District of Kentucky indicted Howard for aggravated sexual assault based on his attack on Porter and for first-degree wanton endangerment based on his attempt to run over Jones. The district court granted the government's request to detain Howard pending trial, which was originally scheduled for July 28, 1993. Trial did not commence until August 15, 1994, however, because the district court granted four successive continuances. The first and fourth continuances were sought by Howard, and Howard joined the government in requesting the second. The only delay that was not at least partly attributable to Howard was the third continuance, from February 2, 1994 to May 9, 1994, which the government sought in order to compare samples of Howard's blood, saliva, and hair with samples found on Porter and her clothing.

On May 23, 1994, Howard moved to dismiss the indictment against him because he had not been brought to trial within the time limit specified by the Speedy Trial Act. The district court denied the motion, finding that Howard's "waiver" of the Speedy Trial Act defense when seeking his first continuance in July of 1993 precluded him from raising that defense thereafter. After being tried and convicted on both

counts of the indictment, Howard was sentenced to a term of life imprisonment plus sixty months.

In his appeal of the 1994 conviction, Howard raised several substantive challenges and reiterated his allegations that he was denied a speedy trial. This court noted that the provisions of the Speedy Trial Act are not waivable by a defendant and that, in any case, Howard's purported waiver when seeking his first continuance did not bar him from opposing a subsequent continuance sought by the government. *See United States v. Howard*, No. 94-6543, 1997 WL 705077, at *11 (6th Cir. Nov. 6, 1997). Focusing on the three-month continuance requested by the government, this court concluded that the district court had improperly failed to make an "ends of justice" finding as required by the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(8). Because more than seventy non-excluded days elapsed from the time of Howard's indictment without any such finding, the judgment of the district court was vacated and the case remanded for a determination as to whether the dismissal ought to be with or without prejudice.

Upon remand, the district court considered the factors governing dismissals as set forth in the Speedy Trial Act, *see* 18 U.S.C. § 3162(a)(2), and concluded that Howard's indictment should be dismissed without prejudice. On April 6, 1998, Howard was indicted for a second time and the trial tentatively set for June 8, 1998. The government then moved for a continuance until September 28, 1998, claiming that Porter, the victim and central witness in the government's case, had been hospitalized for premature labor and would be unavailable for at least eight weeks. The district court granted the motion, expressly finding that the four-month delay would serve the ends of justice by allowing the primary witness in the case to testify.

On September 14, 1998, Howard sought a continuance, claiming that his forensic expert would be unavailable to testify during the week set for trial. The trial eventually commenced on October 23, 1998. Howard was again

defendant's trial is delayed. "Pretrial delay is often both inevitable and wholly justifiable." *Id*. at 656. When the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced with specificity will not make out a speedy trial claim no matter how great the ensuing delay. *See id*.

Where there is evidence of negligence on the government's part, but no bad faith, the Supreme Court has declared that a presumption of prejudice may arise, depending upon the length of the delay. *See id*. at 657. "[T]o warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Id*. In *Doggett*, the Supreme Court noted an "extraordinary 8 1/2 year lag between Doggett's indictment and arrest," *id*. at 652, and concluded that this delay was sufficient to create a presumption of prejudice to the defendant. The Court also noted that "lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Id*. at 652 n.1.

Thus, even if we assume that the government was negligent in prosecuting Howard's cases, the length of the delays—three months and five months, respectively—would be insufficient to create a presumption of prejudice in the absence of any evidence of affirmative misconduct. Because the delays attributable to the government in both of Howard's trials were neither excessively long nor motivated by bad faith, we conclude that Howard's Sixth Amendment right to a speedy trial was not violated.

## C.    Sufficiency of the evidence

Howard next alleges that the evidence was insufficient to support his convictions. In reviewing the sufficiency of the evidence for a jury conviction, the evidence must be viewed in the light most favorable to the prosecution, and the conviction must be sustained if "*any* rational trier of fact could have found the essential elements of the crime beyond

*v. Holyfield*, 802 F.2d 846 (6th Cir. 1986) (holding that a five-month delay was constitutionally permissible).

The second factor considered in the *Barker* analysis is the reason for the delay. "Delays intended to secure a tactical advantage weigh heavily against the government." *See White*, 985 F.2d at 275. As discussed above, the district court determined that the delays caused by the government in this case were not motivated by bad faith or attempts to seek a tactical advantage. Moreover, the four-month continuance sought by the government prior to Howard's second trial was prompted by the unavailability of a witness, which has been explicitly recognized as a legitimate justification for a continuance. *See Barker*, 407 U.S. at 531 ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay.").

Turning to the third factor of the *Barker* test, Howard properly points out that he repeatedly asserted his right to a speedy trial and objected to the continuances sought by the government. In addition, Howard moved to dismiss both his first and second indictments for violations of the Speedy Trial Act, and successfully pursued this claim on appeal from his first trial. We agree that Howard persistently asserted his right to a speedy trial at all stages of this case.

The fourth and final factor set out in *Barker* is the prejudice suffered by the defendant. "The most important factor under prejudice is possible impairment of the defense." *White*, 985 F.2d at 276. As discussed above, Howard has failed to identify any specific way in which his defense was prejudiced during either of his trials. On appeal, Howard cites *Doggett v. United States*, 505 U.S. 647 (1992), for the proposition that delay, in and of itself, may create a presumption of prejudice. *Id*. at 655-56 ("[A]ffirmative proof of prejudice is not essential to every speedy trial claim. . . . [E]xcessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.").

The presumption of prejudice discussed in *Doggett*, however, is not automatically applicable whenever a

---

convicted and sentenced to the same term as before—life plus sixty months' imprisonment.

## II.  ANALYSIS

The primary thrust of Howard's appeal is that the delays before each of his two trials violated both the Speedy Trial Act and his Sixth Amendment right to a speedy trial. For the reasons set forth below, we disagree.

### A.  Speedy Trial Act

#### 1.  *Howard's first trial*

The district court granted four continuances prior to Howard's original trial. Three of these continuances—the first, second, and fourth—were either requested by Howard or jointly requested by Howard and the government. In Howard's first appeal, he therefore focused on the third continuance, a three-month delay granted at the government's request. *See United States v. Howard*, 1997 WL 705077, at *3. Noting that the district court had not made "ends of justice" findings to determine whether this period was excludable from the Speedy Trial Act computation, this court agreed that the three-month continuance violated the Speedy Trial Act and remanded for a determination as to whether dismissal should be with or without prejudice. The district court dismissed Howard's indictment without prejudice.

Howard argues on appeal that his indictment should have been dismissed with prejudice, thus foreclosing future prosecution. In reviewing such a decision, we employ a "modified abuse of discretion standard." *United States v. Pierce*, 17 F.3d 146, 148 (6th Cir. 1994). This review differs from the typical abuse of discretion standard in that it "requires the reviewing court to undertake more substantive scrutiny to ensure that the judgment is supported in terms of the factors identified in the statute." *United States v. Taylor*, 487 U.S. 326, 337 (1988).

The Speedy Trial Act does not specify whether dismissal should be with or without prejudice, nor does it contain a default presumption one way or the other. *See* 18 U.S.C. § 3162(a)(2); *Taylor*, 487 U.S. at 334. Congress did, however, provide three factors that a court should consider when making this determination. They are "the seriousness of the offense, the facts and circumstances of the case which led to the dismissal, and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id*.

Howard does not dispute that the first factor militates against dismissal with prejudice. The district court properly determined that "Howard's alleged crimes, aggravated sexual abuse . . . and wanton endangerment, are serious and violent ones." Indeed, the aggravated sexual abuse charge carries a maximum sentence of life imprisonment, underscoring the gravity with which it was viewed by Congress. *See United States v. Koory*, 20 F.3d 844, 847 (8th Cir. 1994) (looking to the length of a sentence to determine the seriousness of an offense for the purposes of the Speedy Trial Act).

Howard argues, however, that the district court failed to properly consider the second factor—"the facts and circumstances which led to dismissal." In his opinion, "[t]he bulk of the unjustified delay that violated the Speedy Trial Act was caused by the government's failure to prepare and test its evidence in a timely manner."

The record indicates otherwise. On May 24, 1993, five days after Howard was indicted, the government moved for an order requiring Howard to tender blood, saliva, and hair samples. That motion was granted on July 12, 1993. As of November 29, 1993, however, Howard had still failed to comply with the district court's order. The government ultimately procured the samples with a search warrant in December of 1993. When the second continuance (requested by both parties) expired on February 2, 1994, the government requested a third continuance in order to complete tests on the samples provided by Howard.

right to a speedy trial, the legislation does not purport to be coextensive with that amendment." *United States v. Gonzalez*, 671 F.2d 441, 443 (11th Cir. 1982); *see also* 18 U.S.C. § 3173 ("No provision of this chapter shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution.").

"In determining whether a defendant's right to a speedy trial has been violated, an appeals court reviews questions of law de novo and questions of fact under the clearly erroneous standard." *United States v. Smith*, 94 F.3d 204, 208 (6th Cir. 1996). The landmark case examining the constitutional right to a speedy trial is *Barker v. Wingo*, 407 U.S. 514 (1972). In *Barker*, the Supreme Court listed the following four factors that a court must examine to determine whether a defendant's right to a speedy trial has been violated: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id*. at 530. Three of these four factors militate against Howard's Sixth Amendment claim.

First, in calculating the length of the delay, only those periods of delay attributable to the government or the court are relevant to Howard's constitutional claim. *See Barker*, 407 U.S. at 529 ("We hardly need add that if delay is attributable to the defendant, then his waiver may be given effect under standard waiver doctrine."); *see also United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (excluding from the time counted towards a Sixth Amendment violation the time during which the defendant "expressly participated in the delay."). The first, second, and fourth continuances prior to Howard's first trial were requested either solely or jointly by Howard. Thus the relevant delay before Howard's first trial was the three-month continuance discussed above in reference to Howard's Speedy Trial Act claim. The relevant delay prior to Howard's second trial—excluding the one-month continuance requested by Howard—was five months. A delay of five months is not per se excessive under the Sixth Amendment. *See White*, 985 F.2d at 275 (finding that a six-and-one-half-month delay was not excessive); *United States*

disturbed unless it constitutes an abuse of discretion. *See United States v. Monger*, 879 F.2d 218, 221-22 (6th Cir. 1989). Howard is unable to produce any case authority supporting the proposition that the affidavit of an attorney under facts similar to those before us is insufficient evidence upon which to base a continuance. Indeed, in the one case cited by Howard involving an allegedly unavailable witness, the appellate court expressly held that a district court properly relied upon an affidavit from the government's counsel to find that the witness was unavailable for trial. *See United States v. Koller*, 956 F.2d 1408, 1412 (7th Cir. 1992) ("Where, as in this case, the affidavit set out facts describing the medical condition of the witness and there was no evidence to suggest that the government's affidavit was untruthful or its information unreliable, the showing was sufficient for the district judge to find the witness unavailable due to his medical condition pursuant to § 3161(h)(3) of the Speedy Trial Act.").

Moreover, the district court's grant of the government's motion without the benefit of input from Howard is not reversible error. *See United States v. Goetz*, 826 F.2d 1025, 1027 (11th Cir. 1987) (affirming the district court's grant of an extension that was based solely on the government's motion). Nothing prevented Howard from filing a motion for reconsideration after the district court issued its ruling. *Cf. United States v. Bourne*, 743 F.2d 1026, 1031 (4th Cir. 1984) (holding that a district court's grant of a continuance pursuant to an ex parte communication with the government's counsel was not reversible error where the defendant was free to, and indeed did, argue that the continuance was improper at a subsequent hearing).

**B.   Howard's Sixth Amendment right to a speedy trial**

In addition to his Speedy Trial Act claims, Howard contends that the extended delays throughout his two prosecutions violated his Sixth Amendment right to a speedy trial. "Although the passage of the [Speedy Trial] Act was in part an attempt by Congress to quantify the sixth amendment

Given these circumstances, the district court determined that "the violation did not result from prosecutorial bad faith nor from any attempt to take advantage of the delay. . . . Nor can Defendant show a pattern of negligence on the part of the United States Attorney's Office." We see no evidence indicating that this determination was clearly erroneous. Indeed, had the district court conducted an "ends of justice" inquiry and excluded the time of the third continuance from the computation period, as it presumably would have done, there would have been no violation of the Speedy Trial Act in the first place. Instead, the district court mistakenly concluded that Howard's prior "waiver" of his right to a speedy trial when moving for an earlier continuance in July of 1993 barred him from raising that defense at a subsequent stage.

Although a protracted and inexcusable period of inactivity on the part of the district court may warrant dismissal with prejudice in some cases, *see United States v. Moss*, No. 98-6042, __ F.3d __ (6th Cir. June 28, 2000) (dismissing a defendant's indictment with prejudice where the district court sat on a suppression motion for over a year without explanation), the district court's error in this case was a good-faith misinterpretation of the Speedy Trial Act's requirements that resulted in a relatively short delay of the trial. We therefore conclude that the district court did not abuse its discretion in concluding that the second factor also favors dismissal without prejudice.

The third and final factor that a court must consider in evaluating whether a dismissal under the Speedy Trial Act should be with prejudice is "the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay, *see Pierce*, 17 F.3d at 149, and whether the government engaged in "prosecutorial misconduct that must be deterred to ensure compliance with the Act." *Id.*

The district court concluded that both of these factors weighed in favor of dismissing without prejudice. First, Howard was unable to identify any particularized prejudice to his defense that resulted from the grant of the third continuance. Second, as discussed above, the district court found no evidence of either bad faith or a pattern of negligence on the part of the government that would warrant dismissal with prejudice for the sake of deterrence.

Thus, considering all of the factors set out in the Speedy Trial Act, we conclude that the district court did not abuse its discretion in dismissing Howard's indictment without prejudice. Howard contends that "[i]f the only repercussion to the government of violating the Speedy Trial Act is subjecting the defendant to another trial, the Act has lost its meaning." The Supreme Court has considered and rejected this argument, however, recognizing that dismissal without prejudice "forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitation grounds." *United States v. Taylor*, 487 U.S. 326, 342 (1988). In any event, Congress made the policy decision to leave this determination to the guided discretion of the district court.

In addition to his challenge to the third continuance, Howard also maintains that the grant of the fourth continuance prior to his original trial violated the Speedy Trial Act. According to Howard, the government was not forthcoming with information regarding Porter's psychiatric history. This forced Howard to seek a fourth continuance on May 9, 1994 when he discovered that Porter was taking anti-depressants at the time of the alleged assault.

Howard himself sought this fourth continuance, however, in order to conduct discovery regarding Porter's psychiatric history and to test the fluid samples recovered from Porter's clothing on the day of the attack. Because Howard requested this continuance, he is barred from arguing that it was not in the interests of justice. *Cf. United States v. Monroe*, 833 F.2d 95, 99 (6th Cir. 1987) (holding that a defendant could not

object to the exclusion of a period of time from the Speedy Trial Act computation when defendant's "counsel specifically consented to the exclusion of this time in the interest of justice and thereby waived any objections thereto").

### 2. *Howard's second trial*

After Howard was indicted for the second time in April of 1998, he had to wait six months before his trial commenced in October of that year. The passage of four of those months resulted from a continuance requested by the government on the ground that Porter had been hospitalized after going into premature labor and was therefore unavailable to testify. Attached to the government's motion was an affidavit in which the government's counsel stated that he had received a message taken by his secretary from Porter on May 22, 1998 to the effect that Porter was in the hospital due to premature labor and had been told by her doctor to "avoid stress." The affidavit further related the government attorney's May 26, 1998 conversation with Porter, in which Porter again called from the hospital and said that her doctor wanted to forestall delivery of her baby for "at least another eight weeks." In its motion, the government argued that the continuance due to Porter's medical condition should be excluded from the court's Speedy Trial Act calculations under 18 U.S.C. § 3161(h)(3)(A), which provides that "[a]ny period of delay resulting from the absence or unavailability of . . . an essential witness" is excludable.

The district court granted the government's motion, holding that the continuance would serve the ends of justice by allowing an essential witness to be present at trial. Howard argues on appeal that the unverified affidavit submitted by the government did not provide adequate evidentiary support for the district court's findings. He further objects to the fact that the district court granted the government's motion for a continuance one day after receiving it, before Howard even had an opportunity to respond.

A district court's determination that a delay meets the "ends of justice" exception to the Speedy Trial Act will not be