NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0381n.06
Filed: May 11, 2005

No. 04-3273

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| MIRL WILSON, | ) | |
| | ) | O P I N I O N |
| *Defendant-Appellant*. | ) | |

BEFORE:    COLE and SUTTON, Circuit Judges; and BARZILAY, Judge.[*]

**R. GUY COLE, JR., Circuit Judge.**  Mirl Wilson was arrested by local law enforcement officials in Cleveland, Ohio, for possessing a concealed sawed-off shotgun.  Wilson was placed in custody in the Cuyahoga County Jail while state authorities prepared charges and sought an indictment against him.  During the period of his custody, state authorities agreed that they would drop all charges against Wilson in consideration of an impending indictment in federal court on similar charges.  Following his indictment and arraignment in federal court, Wilson moved for dismissal of the indictment, asserting that his constitutional right to a speedy trial had been violated.  The district court denied the motion.  For the reasons that follow, we **AFFIRM** the judgment of the district court.

---

[*] The Honorable Judith M. Barzilay, Judge of the United States Court of International Trade, sitting by designation.

## I. BACKGROUND

On June 6, 2003, law enforcement officers in Cleveland, Ohio arrested Mirl Wilson for possession of a concealed sawed-off shotgun. Wilson was held in the Cuyahoga County Jail over the weekend, until Monday, June 9, 2003, when he was arraigned in the Cleveland Municipal Court for purposes of lodging an initial plea to the charge that he carried a concealed weapon. The parties agree that a public defender was present during this initial arraignment and that this defender was likely representing dozens of indigent defendants who were entering preliminary pleas that morning. Moreover, Wilson concedes that an attorney—presumably the public defender—accompanied him as he pleaded not guilty and waived a preliminary hearing. After Wilson entered his initial plea, the Municipal Court set bond. Wilson was unable to pay the bond and therefore remained in state custody. Wilson's case thereupon was sent to the Cuyahoga County Grand Jury for possible return of an indictment.

Meanwhile, the Assistant County Prosecutor, Paul Myles, contacted federal prosecutors about Wilson's case. Myles is the state prosecutorial liaison for "Operation Safe Neighborhoods," a program whose goal is to transfer felony gun violation cases from state to federal court so that violators will be subjected to tougher penalties. On July 2, 2003, a federal grand jury returned an indictment against Wilson.

Unaware that Wilson was in state custody in the county jail, the federal court issued a warrant for Wilson's arrest at his last known address.[1] Assured that federal prosecutors were taking

---

[1] The confusion on the part of the federal authorities may have stemmed from the fact that Wilson's name was misspelled as "Wilcox" on some of their documents, and this name did not

the case, Myles dropped the state charges against Wilson on July 17. Thus, the state grand jury never indicted Wilson. At some point after the state charges were dropped, Wilson claims that, with assistance of the jail's law library staff, he viewed the state court docket for his case and learned that there were no state charges pending against him. Wilson and the librarian apparently concluded that the state's case had been dismissed and that the state simply "forgot about him." By August 22, 2003, the federal authorities realized that Wilson was in state custody. The Office of the United States Attorney then sought a writ to bring Wilson into federal custody for arraignment. The writ was granted and Wilson was arraigned on September 2, 2003. Wilson was assigned counsel at that time.

On the trial level, Wilson moved to suppress the shotgun and also moved for dismissal of the indictment because he was held in state custody for sixty-two days—from July 2, 2003 until September 2, 2003—without being presented with a federal indictment. At the district court's request, the parties filed supplemental pleadings addressing how Wilson got "lost in the system," the reason for the delay in locating him, and whether he suffered any prejudice as a result. The district court ultimately denied both motions.

Wilson entered a conditional guilty plea on November 13, 2003, and was sentenced on February 10, 2004. Wilson appealed the district court's denial of both motions; however, he now challenges only the district court's refusal to dismiss the indictment.

## II. ANALYSIS

---

appear on any of the state prison lists.

- 3 -

## A. Standard of Review

We review the district court's decision to deny a motion to dismiss an indictment for abuse of discretion. *United States v. Washington*, 127 F.3d 510, 512-13 (6th Cir. 1997); *United States v. Overmyer*, 899 F.2d 457, 465 (6th Cir. 1990). As usual, we review factual findings for clear error and questions of law *de novo*. *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000); *United States v. Knipp*, 963 F.2d 839, 843 (6th Cir. 1992).

## B. Sixth Amendment Right to a Speedy Trial

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. CONST. amend. VI.

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.

*Doggett v. United States*, 505 U.S. 647, 651-52 (1992) (citations omitted). "[U]sed in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the [speedy trial] enquiry." *Id*. at 652 n.1. If the speedy trial analysis is triggered, the court must balance the following four factors to determine whether the defendant's right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant has asserted his speedy trial right; and (4) the resulting prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972). If the defendant's speedy trial right has been violated, the court is empowered to

- 4 -

dismiss the federal indictment against him. FED. R. CRIM. P. 48(b) ("The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: [1] presenting a charge to a grand jury; [2] filing an information against a defendant; or [3] bringing a defendant to trial."); *see also United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000) (recognizing that in rare circumstances, the court may exercise its supervisory power to dismiss an indictment when not doing so would cause substantial prejudice to the defendant).

Here, although the district court expressed its concern that Wilson was lost in the system for over two months, the court concluded that the delay was not sufficiently unreasonable to trigger a speedy trial inquiry. In determining that Wilson was not entitled to a finding of presumptive prejudice, the court also found that Wilson suffered no actual prejudice to his defense, and thus denied dismissal of the indictment. The question before us is whether the particular circumstances surrounding the delay in Wilson's case are so unreasonable as to trigger a constitutional speedy trial inquiry. We conclude that they are not.

The Supreme Court has stated that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Although the Supreme Court has set no minimum boundaries, it has determined that as a delay approaches one year or more, the delay likely will trigger the four-factor speedy trial inquiry. *Doggett*, 505 U.S. at 652 n.1. We have previously determined that delays of a shorter duration do not trigger the speedy trial inquiry. *Howard*, 218 F.3d at 564-65 (finding that a five-month delay was not presumptively

prejudicial); *United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (finding that a six-and-a-half month delay was not presumptively prejudicial).

Wilson concedes that the length of the delay in his case—sixty-two days—alone is insufficient to trigger the speedy trial inquiry. Wilson argues, however, the facts surrounding his claim compel the triggering of the speedy trial inquiry and are thus distinguishable from our prior precedent in which the speedy trial inquiry was not triggered. *See Barker*, 407 U.S. at 530-31 (noting that "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case"). Wilson argues that the typical speedy trial claim arises when a defendant is either free, or out on bond, and is simply waiting for the commencement of the trial. According to Wilson, in most cases where the defendant is in custody while awaiting trial, the defendant has counsel during the delay. Wilson also argues that his case is different because the federal authorities, whom he claims were confused as to his whereabouts, could not present him with the federal indictment, nor did they provide him with counsel while he was in custody. Wilson's argument is unpersuasive.

We recognize that there may be a set of particularly egregious or unusual circumstances that would demand a speedy trial inquiry even where the delay is less than one year. A delay of a few months may trigger the speedy trial inquiry if, for example, the defendant can show that the delay actually prejudiced his ability to assert a defense. *Cf. Doggett*, 505 U.S. at 655-56 (noting that prejudice may either be presumed from certain factual scenarios, such as excessive delay, or it may be affirmatively proven by the defendant). Here, however, Wilson does not claim that his ability to assert a defense was impaired in any meaningful way.

Wilson also argues that he was denied counsel. Wilson claims that he could not afford counsel and that no counsel was provided to him while he was held in custody during the sixty-two-day delay prior to his arraignment in federal court. Wilson's argument fails upon consideration of the following facts: (1) Wilson conceded that he was, albeit briefly, assigned counsel for his initial state arraignment when he waived a preliminary hearing and pleaded not guilty; (2) Wilson was informed of his right to counsel twice in writing; (3) the record does not demonstrate that Wilson ever asked to see the counsel who was initially appointed to him, nor did he request new counsel; and (4) Wilson has had previous experience in the criminal justice system, and had previously been assigned counsel for unrelated incidents, and therefore is aware of his right to counsel.

Wilson counters that it is the Government's burden, not his, to ensure that counsel was appointed and met with him while he was in state custody, despite the fact that he made no such request. It is undisputed that Wilson's right to counsel attached on June 9, the date of his first appearance in state court, when he pleaded not guilty. *See Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972) ("[I]t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. . . . [T]he right attaches at the time of arraignment, and the Court has recently held that it exists also at the time of a preliminary hearing.") (citations omitted). The parties do not dispute that Wilson was appointed counsel for the purposes of this initial arraignment.

"Once the right to counsel has attached and been asserted, the State must of course honor it." *Maine v. Moulton*, 474 U.S. 159, 170 (1985). In particular, the Supreme Court has stated that:

> The Sixth Amendment [ ] imposes on the State an affirmative obligation to respect and preserve the accused's choice *to seek this assistance*. We have on several occasions been called upon to clarify the scope of the State's obligation in this regard, and have made clear that, at the very least, the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel.

*Id*. at 171 (emphasis added). Thus, the Court has made clear that both the state and federal authorities would have had to honor Wilson's request—had he made one—for counsel following the initial plea hearing. However, Wilson made no such request nor did he assert any effort to contact the public defender who represented him at the hearing. Nor does Wilson claim that the state somehow violated his rights by failing to advise him of his right to counsel prior to his waiver of the preliminary hearing. Furthermore, the mere fact that Wilson was in custody does not mean that his right to counsel was infringed, as he makes no claim that county jail officials obstructed or unjustifiably restricted any opportunity to meet with counsel. *See Procunier v. Martinez*, 416 U.S. 396, 419 (1974) ("[I]nmates must have a reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid."), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

Wilson has asked that the unique circumstances of the delay should trigger a speedy trial inquiry that would otherwise not be triggered. The circumstances of his case, however, reveal no actual prejudice, no intent on the part of Government authorities to delay his case, and no action by such authorities to deny him access to court-appointed counsel. Hence, these circumstances are not

so unreasonable as to trigger a constitutional speedy trial inquiry.[2] *See generally Howard*, 218 F.3d at 563-65 (finding that a five-month delay did not violate the defendant's speedy trial rights where the Government had not proceeded in bad faith); *White*, 985 F.2d at 275 (finding that a six-and-a-half month delay did not violate the defendant's speedy trial rights where the defendant was already in prison on unrelated charges and has suffered no prejudice); *United States v. Love*, No. 97-6360, 1999 WL 115523, at *7 (6th Cir. 1999) (unpublished) (finding that a twenty-one-month delay between indictment and arraignment did not violate the defendant's speedy trial rights where there was no evidence of actual prejudice, the Government had not proceeded in bad faith, and most of the delay was due to the fact that the Government was unable to find him prior to his arrest).

Our decision does not foreclose the possibility that a set of circumstances could arise where a defendant who truly was deprived of his right to counsel would be entitled to a speedy trial inquiry. If the speedy trial inquiry were triggered in such a circumstance, the defendant might be able to show that he suffered other forms of prejudice besides actual prejudice to his defense, such as oppressive pretrial incarceration or excessive anxiety based on his deprivation of counsel. *See Barker*, 407 U.S. at 523. *But see Jackson v. Duckworth*, No. 93-2773, 1995 WL 123074, at *3 (7th Cir. 1995) (unpublished) ("[G]eneral allegations of anxiety and concern in anticipation of trial ordinarily do not constitute sufficient evidence of prejudice where the other *Barker* factors do not

---

[2] Wilson also attempts to couch his argument as a Fifth Amendment due process claim. However this claim has no merit because the Fifth Amendment protects defendants only against excessive or prejudicial pre-indictment delay. *See United States v. Lovasco*, 431 U.S. 783, 788 (1977); *United States v. Greene*, 737 F.2d 572, 574 (6th Cir. 1984). The twenty-six-day pre-indictment delay in this case was not shown to be oppressive or prejudicial, and therefore cannot help Wilson.

weigh in the defendant's favor."). Alternatively, a true deprivation of counsel during the delay could itself constitute a factor to be considered in addition to the four articulated in *Barker*. *Barker*, 407 U.S. at 533 ("We regard none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."). Such extraordinary circumstances are not presented by Wilson's case, and therefore the district did not abuse its discretion by declining to dismiss the federal indictment against him.

### III. CONCLUSION

For the preceding reasons, we hereby **AFFIRM** the judgment of the district court.