**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0274n.06

Case No. 13-5506

**UNITED STATES COURT OF APPEALS**

**FOR THE SIXTH CIRCUIT**

**FILED**

Apr 14, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| JAMES BAKER, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:     COLE and ROGERS, Circuit Judges; HOOD, District Judge.[*]

COLE, Circuit Judge.  After a three-day jury trial, Defendant-Appellant James Baker was convicted of being a felon in possession of a firearm, possession of crack cocaine with intent to distribute, and carrying a firearm during and in relation to a drug-trafficking offense.  Because of Baker's substantial criminal history, the district court applied a career offender enhancement and an Armed Career Criminal enhancement, resulting in a Sentencing Guidelines range of thirty-five years to life.  Though the court ultimately imposed a twenty-three year sentence—twelve years below the Guidelines range—Baker appeals his convictions and sentence.  For the following reasons, we affirm the judgment of the district court.

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

# I. BACKGROUND

## A. Factual Background

In 2008, Memphis Police Department Officers Mark Reese and Dennis Rodgers were patrolling Northside Manor Apartments in an area known for drug activity and gang violence. While monitoring the area, the officers observed James Baker approach a parked car and engage in a hand-to-hand transaction with the occupants inside the vehicle. After this transaction— which appeared to be "some kind of narcotic drug sale"—had been completed, the vehicle left the apartment parking lot. Officer Reese then called a nearby marked police unit to stop the car. As the officers attempted to leave the apartment complex to assist with the stop, they observed Baker approach a second vehicle with what appeared to be crack cocaine in his hand and a gun in his back right pocket. When Reese realized that Baker had a weapon, Reese instructed the police unit to abandon the stop and come to the apartment complex for back-up. But before that unit reached the complex, Reese approached Baker from behind and seized the firearm from his back-pocket, while Rodgers made contact with the driver of the car. According to Reese, the first thing Baker said was "I have a gun in my back pocket." Trial testimony later established that the plastic baggie in Baker's hand contained crack cocaine.

Baker was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(1)(1), and carrying a firearm during and in relation to a drug-trafficking offense in violation of 18 U.S.C. § 924(c). A jury convicted Baker on each count.

**B. Procedural Background**

*1. Motion to Suppress*

Before trial, Baker moved to suppress the firearm and drugs recovered during his arrest on the basis that the officers lacked probable cause to detain him and that the evidence was seized in violation of his Fourth Amendment rights. A magistrate judge conducted a hearing at which Reese testified that he observed Baker, from about thirty to forty feet away, make a hand-to-hand transaction with occupants inside the first vehicle. As Baker approached the second car, Reese observed drugs in Baker's hand and a firearm in his back-pocket from a distance of eight feet. Attempting to discredit Officer Reese's account, Baker testified that on the day of his arrest, he was wearing a shirt that covered his back pockets, implying that Reese did not see a gun in his pocket. Baker, however, did not dispute that he possessed drugs and a firearm when he was arrested. Based on the testimony presented, the magistrate judge recommended denial of the motion to suppress.

Over Baker's objections, the district court adopted the magistrate judge's recommendation, finding that there was probable cause for the arrest. Accepting Reese's overall testimony, the district court concluded that the best explanation for his request for back-up was that Baker was armed and in the process of engaging in a drug transaction. Ultimately, the district court credited Officer Reese's testimony over Baker's and denied the motion.

*2. Motion to Reopen Suppression Hearing*

Over a year after the suppression hearing, Baker moved to reopen and reconsider the motion to suppress based on "newly discovered evidence." In the motion, Baker indicated that he had been appointed new counsel who obtained evidence in response to Fed. R. Crim. P. 17 subpoenas, which would "call[] into question" the district court's decision to deny the motion.

In addition, Baker identified two eyewitnesses who observed the events before his arrest and Baker argued that these witnesses would also cast doubt on the court's ruling. Without offering further details, Baker proposed that the court reopen the hearing on the morning of the first day of trial. The government opposed Baker's request.

In denying the motion to reopen, the district court concluded that Baker had not demonstrated that the evidence he wished to present was "unavailable or unobtainable at the time of the hearing;" he did not reveal the "identity of the eye-witnesses [or] the character of their testimony;" and he "fail[ed] to identify specific evidence" that would undermine the court's factual findings or legal analysis. According to the court, reopening the hearing would also prejudice the government as it could not be expected to "marshal its evidence and prepare its arguments in less than a week or to address issues that were heard and decided a year ago." Beyond this, the court noted that Baker's motion was untimely because he filed it after the deadline provided in the court's scheduling order.

Without leave of court, Baker supplemented the record by filing a reply to the government's motion in opposition, where he described in greater detail the nature of the new evidence he wished to present. Specifically, after he filed the motion to reopen, the government produced *Brady*, *Giglio*, and Jencks Act material, including a firearms screening report. This report, prepared by Deputy Patrick Deane, summarized Baker's arrest and indicated that Reese observed a gun and crack cocaine from 400 to 500 feet away, using binoculars. But at the suppression hearing, Reese testified that he observed a gun in Baker's pocket and drugs in his hand from eight feet away. According to Baker, this inconsistency undermined the district court's credibility determination and warranted reopening of the hearing.

The district court disagreed and again denied the motion to reopen, cautioning that "[c]ontinued litigation surrounding [this issue] threatens the finality afforded litigants by pre-trial motions." Because Baker filed the reply without leave of court, the district court struck it from the record. But the court determined that even if the reply had not been struck, the evidence was insufficient to support reconsideration as it would not have changed the outcome of the hearing.

At sentencing, the district court adopted the facts set forth in Baker's presentence investigation report. Based on his prior convictions, Baker qualified as a career offender under U.S.S.G. § 4B1.1(b)(1) and an Armed Career Criminal under § 4B1.4(b)(3)(B), which resulted in a Guidelines range of thirty-five years to life. After examining the factors in 18 U.S.C. § 3553(a), the court imposed a twenty-three year sentence. Baker timely appealed. We have jurisdiction under 28 U.S.C. § 1291, which grants this court jurisdiction over final decisions of the district court.

## II. ANALYSIS

### A. Motion to Reopen

In Baker's first assignment of error, he argues the district court should have granted his motion to reopen the suppression hearing. In his view, the basis for reopening the hearing stems from conflicting accounts regarding the distance from which Officer Reese observed the gun; while Reese testified that he saw the firearm in Baker's pocket from eight feet away, the firearm screening report indicated that Reese was much further away.

We review a district court's refusal to reopen a suppression hearing for abuse of discretion. *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002). A district court abuses its discretion when the reviewing court is "firmly convinced that a mistake has been made." *United States v. Isaiah*, 434 F.3d 513, 519 (6th Cir. 2006). Though a court may reopen a

hearing, it should be "extremely reluctant" to do so. *See United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1111 (2005). Whether a district court has abused its discretion in denying a motion to reopen depends on "the timeliness of the motion, the character of the proposed testimony, the effect of granting the motion, and, most importantly, whether the opposing party will be prejudiced by reopening the record." *United States v. Holland*, 522 F. App'x 265, 270 (6th Cir. 2013).

With respect to timing, Baker filed the motion a month after the deadline provided in the district court's scheduling order and only a few days before trial, obligating the government to prepare its witnesses and formulate its strategy in less than a week. The court considered Baker's request to conduct the hearing on the morning of trial to be impractical as such a hearing could not provide "reasoned consideration [of] the facts and law . . . on the morning of trial." Moreover, reopening the hearing over a year after the initial proceeding would have prejudiced the government by requiring it to address arguments decided a year earlier.

The district court also examined the nature of Baker's "newly discovered evidence" and concluded that neither the proposed witness testimony nor the screening report would have changed the result of the suppression hearing, which concerned whether the officers had probable cause to make an arrest. Baker contends that the screening report would have "shattered" Officer Reese's credibility, but at most the report created some uncertainty regarding the precise distance from which Reese initially observed Baker. Regardless of whether the actual distance was 400 to 500 feet, as documented in the screening report or eight feet, as Officer Reese testified—the report does not negate that Baker admitted he had a firearm or that the officers witnessed a hand-to-hand transaction and observed a firearm in Baker's pocket before arresting him.

Moreover, the reliability of the screening report itself is questionable. Although Deputy Deane prepared the document, at trial, Deane could not state affirmatively whether Officer Reese or Rodgers provided the 400 to 500 feet approximation. Reese's testimony cast further doubt on the report's accuracy because Reese never recalled stating that he was 400 to 500 feet away from Baker. Therefore, even if the district court had reopened the suppression hearing, it is implausible that the report would have "shattered," much less diminished, Reese's credibility. In our view, the screening report would not have changed the court's ruling on the motion to suppress. Thus, the court did not commit "a clear error of judgment" in denying the motion to reopen. *Isaiah*, 434 F.3d at 519.

**B. Speedy Trial Claim**

The district court granted approximately sixteen ends-of-justice continuances in this case. Although fourteen were made at Baker's behest, he moved to dismiss the indictment with prejudice, claiming that the delay in bringing him to trial violated the Speedy Trial Act. In light of Baker's affirmative requests for continuances, the district court held that Baker "forfeit[ed]" the argument that his statutory right to a speedy trial had been violated. We agree.

Normally, we review a district court's application of the Speedy Trial Act de novo. *United States v. Gardner*, 488 F.3d 700, 717 (6th Cir. 2007). However, we review for abuse of discretion a district court's determination that a delay satisfies the ends-of-justice exception. *See United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000); *United States v. Stewart*, 628 F.3d 246, 253 (6th Cir. 2010); ("The district court has wide latitude in deciding how to exercise its discretion in applying the ends-of-justice provision of the Speedy Trial Act."). To reverse the district court, Baker must demonstrate that the continuances prejudiced his defense. *Gardner*, 488 F.3d at 718.

Under the Speedy Trial Act, a defendant's trial must begin "within 70 days after he is charged or makes an initial appearance, whichever is later, . . . and entitles [the defendant] to dismissal of the charges if that deadline is not met." *Bloate v. United States*, 559 U.S. 196, 198–99 (2010) (citing 18 U.S.C. §§ 3161(c)(1), 3162(a)(2)). Certain periods of delay, however, are not counted toward the speedy-trial clock. For example, the ends-of-justice continuance, applicable here, excepts any delay "based upon a judge's finding that the 'ends of justice' outweigh the interests of the public and the defendant in a speedy trial." *Gardner*, 488 F.3d at 718; *see also United States v. Cianciola,* 920 F.2d 1295, 1298 (6th Cir. 1990). The district court must state "either orally or in writing, its reasons for finding that the ends of justice outweigh the best interests of the public and the defendant in a speedy trial." *Gardner*, 488 F.3d at 718. If the court does not provide sufficient reasons for granting a continuance, "the resulting delay is not excludable." *Id.* The court must articulate its reasons for granting an ends-of-justice continuance "no later than the ruling on the defendant's motion to dismiss on Speedy Trial Act grounds" as long as the court relied on those reasons when it granted the continuance. *United States v. Stone*, 461 F. App'x 461, 464 (6th Cir. 2012); *United States v. Guimond*, 2000 WL 92268, No. 98-5916, at *4 (6th Cir. Jan. 19, 2000).

The Speedy Trial Act identifies permissible reasons for granting an ends-of-justice continuance, including the "effective preparation" of counsel. 18 U.S.C. § 3161(h)(8)(B)(iv). A court may not, however, consider the "general congestion of the court's calendar, or the Government's lack of diligent preparation or failure to obtain available witnesses." *United States v. Monger*, 879 F.2d 218, 221 (6th Cir. 1989) (citing 18 U.S.C. § 3161(h)(7)(C)). Importantly, if a defendant consents to a delay or continuance, he waives any Speedy Trial Act objection. *United States v. White*, 985 F.2d 271, 275 n.1 (6th Cir. 1993).

To determine whether the Act has been violated, we must examine whether there were more than seventy non-excludable days between Baker's first appearance on April 9, 2009, and when he moved to dismiss on speedy-trial grounds on November 2, 2010. There were, at most, forty-seven non-excludable days during the relevant period; therefore, the time limits set by the Speedy Trial Act were not exceeded.

The district court properly excluded May 22, 2009, through September 17, 2010, from the speedy trial calculation because Baker requested twelve continuances covering this period. Where, as here, a defendant requests or consents to a continuance, he may not complain about the exclusion of time from the speedy trial clock. *Howard*, 218 F.3d at 562 ("Because [the defendant] requested this continuance, he is barred from arguing that [the continuance] was not in the interests of justice."); *United States v. Monroe*, 833 F.2d 95, 99 (6th Cir. 1987) (same); *Guimond*, 2000 WL 92268, at *4 (holding that because the defendant requested a continuance attributable to the disposition of the motion to suppress, the district court correctly denied defendant's motion to dismiss the indictment). While Baker concedes that a defendant's consent to a continuance "waive[s] objections" to the Speedy Trial Act, he maintains that a court must still consider the statutory factors before granting a continuance. Here, the district court fulfilled its obligations under the Act.

The court granted a continuance from August 27, 2010, through September 24, 2010, because it had not yet received a ruling from the magistrate judge on the pending motion to suppress. When the magistrate judge issued her recommendation on September 13, 2010, "a new period of excludable delay" began and continued until the parties filed their objections. *United States v. Andress*, 943 F.2d 622, 626 (6th Cir. 1991). Once the district court received the parties' objections, it had thirty days to keep the motion under advisement. *Id.*; *see* 18 U.S.C.

§ 3161(h)(1)(J). The government filed its objections on October 4, 2010; therefore, the period from October 4, 2010, to November 2, 2010—the date Baker moved to dismiss—is excludable delay because the court had thirty days to consider the pending motion. Because Baker has not established that there were more than seventy non-excludable days between April 9, 2009, and November 2, 2010, his speedy trial claim fails.

Apart from the district court's allegedly improper calculations under the Act, Baker argues that the court failed to explain sufficiently why it granted the ends-of-justice continuances. As provided in the orders, the court indicated that "the interests of justice in allowing additional time to prepare outweigh the need for a speedy trial." According to Baker, the court's explanations were mere "conclusions, not reasons," and that its lack of specificity was insufficient under the Act. Admittedly, the district court's orders were short and formulaic, but it was not required to provide a lengthy explanation. The court satisfied the ends-of-justice requirements because it tracked the language of the statute and granted the motions to continue to give the defense additional time to prepare. *See United States v. Jordan*, 544 F.3d 656, 666 (6th Cir. 2008); *see also United States v. Thomas*, 272 F. App'x 479, 482, 484 (6th Cir. 2008) (concluding that the district court's "laconic and formulaic orders" technically complied with Sixth Circuit precedent).

In a final attempt to establish a Speedy Trial Act violation, Baker argues that without an "affirmative showing on the record" that he personally consented to the continuances, he is not bound by his lawyer's requests for additional time. But the ends-of-justice continuance "does not require a defendant's consent," and Baker's argument to the contrary is unavailing. *United States v. Sobh*, 571 F.3d 600, 603 (6th Cir. 2009); *see also Stewart*, 628 F.3d at 254. ("[E]ven though [defendant] did not provide his consent, the district court acted within its wide range of

discretion in deciding to grant the motion for a continuance that was filed by [the defendant's] attorney.").

As to prejudice, Baker has not alleged, much less demonstrated actual prejudice resulting from the district court's decision to grant the continuances. Accordingly, since the court provided permissible reasons for granting the ends-of-justice continuances—which Baker affirmatively requested—the court did not abuse its discretion.

## C. Alleged Discovery Violations

At trial, defense counsel's theory was that the government inadequately investigated the case because it did not conduct a trace on the firearm, which would have revealed who originally purchased the weapon. Assuming a trace had not been conducted, defense counsel suggested to the jury that the firearm seized during Baker's arrest was a police-issued weapon that the arresting officers had planted. Defense counsel supported this theory using the testimony of the government's firearm expert, Special Agent Benny Allen of the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), who testified that he processed the weapon, identified the make and model of the gun, and determined that it was made outside of Tennessee, no earlier than 1980. Allen did not know whether a trace had been conducted, but he did testify that the firearm was standard issue for law enforcement, thus creating the inference that the firearm could have been planted by Reese or Rodgers.

Unsettled by the implications of Allen's testimony, that evening, the government investigated whether a trace had in fact been performed. Unbeknownst to the government, a trace had been conducted, and the next day, it offered to introduce the report as rebuttal evidence. Baker moved to exclude the report, and the district court granted his request. Nevertheless, the court precluded defense counsel from arguing that a trace had not been

conducted, as this was untrue.  In response, Baker moved for a mistrial, arguing that he could no longer proceed with his defense.  The district court denied the motion.

On appeal, Baker claims the government's failure to provide the trace report until the last day of trial deprived him of due process of law.  He refers to *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, and Federal Rule of Criminal Procedure 16 in support, but Baker cannot establish a cognizable discovery violation under any of these theories.

*1.* Brady *Violation*

To establish a *Brady* violation, Baker must show "(a) suppression [of evidence] by the prosecution . . . (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence."  *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972).  Evidence is material when "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."  *Smith v. Cain*, 132 S. Ct. 627, 630 (2012).  Baker argues that the trace report was "material to preparing [his] defense" and that had he received it before trial, he would have pursued a different defense strategy.

Contrary to Baker's argument, the trace report is not material under *Brady* because its late-disclosure did not deprive him of a fair trial, or "undermine[] confidence in the outcome of the trial."  *United States v. Bagley*, 473 U.S. 667, 678 (1985).  The report did not refute that Officers Reese and Rodgers observed Baker make a hand-to-hand transaction, that Baker told Reese he had a gun, or that Reese seized a firearm and crack cocaine from Baker.  The district court questioned the relevance of the trace report, let alone its materiality, concluding that regardless of whether it was introduced, the report did not pertain to elements of the offenses for which Baker was charged.  The report was neither exculpatory nor did it contain impeaching information.  Indeed, it is unclear how the report could have been used as impeachment evidence

because there was no testimony indicating that a trace *had* been conducted. Agent Allen could not be impeached with the report because he testified that he was *unaware* of whether a trace had been performed.

Moreover, late-disclosure of the report did not prevent Baker from pursuing his theory that the gun had been "planted" on him. Defense counsel elicited testimony from Officers Reese and Rodgers that they were the only individuals to see the firearm in Baker's pocket and that Reese did not accurately record the firearm's serial number in his report as evidence. Given that Baker's fingerprints were not found on the gun, he again had an opportunity to suggest to the jury that the gun had been planted. In effect, Baker had ample opportunity to advance his defense; the district court merely prohibited counsel from arguing that no trace had been performed when counsel knew it had. Since the report was neither exculpatory nor impeaching, an alleged *Brady* violation fails on these facts.

*2. Jencks Act Violation*

We review a district court's ruling on the production of Jencks Act material for clear error. *United States v. Nathan*, 816 F.2d 230, 237 (6th Cir. 1987). Under the Act, statements or reports made by a government witness must be disclosed, on defendant's motion, but only once the witness has testified on direct examination at trial. *See* 18 U.S.C. § 3500. Here, although Agent Allen testified as a government witness, there is no indication that he created, signed, or adopted the contents of the trace report. *See id.* Furthermore, the record does not establish that Officer Reese adopted or reviewed the document. In the absence of evidence demonstrating that the trace report was adopted by a government witness, it is not Jencks material and the government's failure to produce it until the last day of trial did not violate the Act. *Nathan*, 816 F.2d at 237.

### 3. Rule 16 Violation

This court examines a district court's ruling on discovery violations under Federal Rule of Criminal Procedure 16 for an abuse of discretion. *Jordan*, 544 F.3d at 667. Rule 16(a)(1)(E) provides that the government must produce evidence that (1) is material to preparing the defense; (2) the government intends to use in its case-in-chief at trial; or (3) was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E). To establish materiality in the context of Rule 16, Baker must show the existence of a "logical relationship between the information withheld and the issues in the case, as well as the importance of the information in light of the evidence as a whole." *United States v. Lykins*, 428 F. App'x 621, 624 (6th Cir. 2011).

The district court held that the trace information was not material to preparing Baker's defense because it would not have "altered the quantum of proof in Defendant's favor." In fact, admitting the trace report may have weakened Baker's argument that the gun was a police-issued weapon because it was purchased by an individual in 1987, more than two decades before Baker's arrest. Given that the trace examination was not material under Rule 16 and that the district court granted the very remedy Baker requested, the court did not abuse its discretion in excluding the report.

## D. Sentencing

Baker raises two challenges with respect to his sentence. First, he argues that the court erred in applying a career offender and an Armed Career Criminal enhancement without submitting the fact of his prior convictions to the jury. Because Baker did not raise this claim below, we review the district court's decision for plain error. *See United States v. Milan*, 398 F.3d 445, 451 (6th Cir. 2005). To prevail under this standard, Baker must show "(1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) affected the fairness,

integrity, or public reputation of his judicial proceedings." *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010).

A criminal defendant is entitled to have a jury decide every element of the crime with which he is charged. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). But in *Almendarez-Torres v. United States*, the Supreme Court recognized an exception to this general rule and held that "the fact of an earlier conviction" need not be submitted to the jury and proved beyond a reasonable doubt. 523 U.S. 224, 226 (1998). In effect, Baker challenges the continuing legitimacy of *Almendarez-Torres*, suggesting that "there is no Constitutional basis" for this exception and that "a current majority of the Supreme Court rejects [it]." However, the Supreme Court has not overruled *Almendarez-Torres* and we are therefore bound by this decision as "[it] is still good law and will remain so until the Supreme Court explicitly overrules it." *United States v. Anderson*, 695 F.3d 390, 398 (6th Cir. 2012).

The district court, in applying the career offender and Armed Career Criminal enhancements, was not required to submit the fact of Baker's prior convictions to the jury because "the [Supreme] Court has continued to except such factfinding from the requirements of the Sixth Amendment." *United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005).

Next, Baker challenges the district court's imposition of a twenty-three year sentence. After considering the sentencing factors under 18 U.S.C. § 3553(a), the court varied Baker's sentence twelve years below the Guidelines range. Baker claims, without citing any authority in support, that the court should have explained why a twenty-three year sentence was more appropriate than the statutory minimum of twenty years.

We review sentencing decisions for procedural and substantive reasonableness. *United States v. Bolton*, 669 F.3d 780, 781 (6th Cir. 2012). We "must first ensure that the district court

committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). In the absence of a procedural error, we then examine whether the district court's sentence was substantively unreasonable, which may occur if the court relies on "impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). Regardless of whether the sentence is "inside, just outside, or significantly outside the Guidelines range," courts of appeal must apply a deferential abuse-of-discretion standard. *Gall*, 552 U.S. at 51.

In examining the § 3553(a) factors, the district court discussed Baker's background, noting that he had nine juvenile convictions between the age of 13 and 18 and that he did not grow up in "a very positive environment." Although Baker did not complete eighth grade, it was "obvious" to the court that he "has a lot to offer." The court detailed Baker's lengthy criminal history and described the nature and circumstances of the instant offense, first stating that Baker was on probation for state convictions when he was arrested. After considering Baker's presentence report, counsel's arguments, and the § 3553 factors, the district court imposed a twenty-three-year term of imprisonment, finding this to be a "substantial variance" yet "appropriate under all the facts of this case."

As Baker admits, he has a "demanding task" in establishing that the twenty-three-year term was unreasonable because he specifically requested a "substantial variance," which the court granted. Though the court did not explicitly mention each 3553(a) factor, "a reasonable

sentence based on consideration of the factors does not require a rote listing." *United States v. Collington*, 461 F.3d 805, 809 (6th Cir. 2006). Instead, to permit meaningful appellate review, the court "must adequately explain the chosen sentence," *Gall*, 552 U.S. at 50, demonstrating that it has examined "the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). The court did not address the propriety of a twenty-three year versus a twenty-year sentence, but it did consider Baker's arguments, articulate its reasons for the sentence imposed, and afford due consideration to the relevant § 3553(a) factors. And when this occurs, we are "very reluctant to find the sentence unreasonable." *Collington*, 461 F.3d at 811. We therefore affirm the court's sentencing determination.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.