**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0184n.06
Filed: April 4, 2008

No. 06-6019

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| TRINA TREZETTE THOMAS, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| | ) | |

**Before: BATCHELDER, MOORE, and McKEAGUE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Trina Trezette Thomas ("Thomas") appeals her conviction and sentence in the United States District Court for the Western District of Tennessee, on four counts of knowingly submitting false claims to the Internal Revenue Service ("IRS") for income tax refunds, in violation of 18 U.S.C. § 287. Because the government concedes that the district court erred by sentencing Thomas to two consecutive periods of supervised release, we **REVERSE** the judgment of sentence with respect to the term of supervised release and **REMAND** regarding only the supervised-release term. We **AFFIRM** the judgment of conviction and sentence in all other respects. Specifically, we uphold the district court's denial of Thomas's motion to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*; the grant of a six-level enhancement pursuant to United States Sentencing Guideline ("U.S.S.G.")

§ 2B1.1(b)(1)(D); the grant of a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1; and the imposition of a $10,000 fine pursuant to U.S.S.G. § 5E1.2.

## I. FACTS AND PROCEDURE

On December 16, 2004, a grand jury issued an indictment charging Thomas with one count of conspiracy to submit false claims for tax refunds to the IRS, and with eleven counts of knowingly submitting false claims. The district court granted four consecutive continuances by consent of the parties, extending the time excluded under the Speedy Trial Act from January 31, 2005 through August 12, 2005.

The district court subsequently granted a series of continuances upon motions by the government, as well as one continuance by consent. First, on July 26, 2005, the government submitted a motion to continue trial on the ground that the Bureau of Prisons would not clear a cooperating witness for travel to the Western District of Tennessee because she was experiencing a high-risk pregnancy. On August 1, 2005, the district court granted the motion, making "[t]he period from August 12, 2005 through September 16, 2005 . . . excludable under 18 U.S.C. § 3161(h)(8)(B)(iv) to allow government counsel additional time to prepare." Joint Appendix ("J.A.") at 41 (8/1/05 Order). On August 26, 2005, the district court entered a consent order continuing the trial and excluding time under the Speedy Trial Act through November 18, 2005.

The government filed a second motion for a continuance on September 26, 2005, arguing that the pregnant witness was scheduled to deliver her baby on September 27. The Bureau of Prisons had indicated that separating the witness from her infant would constitute a hardship on the inmate's family and that taking custody of the infant would impose a hardship on the Bureau. On October 6, 2005 the district court granted the motion, making "[t]he period from November 18, 2005 through

2

January 13, 2006 . . . excludable under 18 U.S.C. § 3161(h)(8)(B)(iv) to allow government counsel additional time to prepare." J.A. at 47 (10/6/05 Order).

Third, the government submitted a motion to set date certain due to anticipated difficulties in the transporting of witnesses during the holidays, and the district court granted the motion and set the trial date for January 30, 2006. On December 20, 2005, the district court granted a continuance related to the anticipated transportation problems, making "[t]he period from January 13, 2006 through February 17, 2006 . . . excludable under 18 U.S.C. § 3161(h)(8)(B)(iv) to allow government counsel additional time to prepare." J.A. at 52 (12/20/05 Order).

Fourth, on January 23, 2006, upon suspicion that it had discovered *Brady* and *Giglio* material, the government submitted a motion asking the district court to compel Thomas to submit voice exemplars needed for evaluation of the material and requesting a continuance to conduct necessary investigation. On January 24, the district court granted the motion, making "[t]he period from February 17, 2006 through March 17, 2006 . . . excludable under 18 U.S.C. § 3161(h)(8)(B)(iv) to allow government counsel additional time to prepare." J.A. at 55 (1/24/06 Order).

On February 2, 2006, the government filed a motion to dismiss counts one, five, six, and seven of the indictment. J.A. at 62 (2/2/06 Mot.). On March 6, 2006, the government made its fifth motion for a continuance because the assigned Assistant United States Attorney ("AUSA") would be out of town on March 17 and one of the government's witnesses would be testifying in another trial in Jackson, Mississippi. That day, the district court granted the motion, making "[t]he period from March 17, 2006 through April 14, 2006 . . . excludable under 18 U.S.C. § 3161(h)(8)(B)(iv) to allow government counsel additional time to prepare." J.A. at 66 (3/6/06 Order).

Thomas filed a motion to dismiss the indictment for violation of the Speedy Trial Act on April 3, 2006, and the government filed a response. The district court held a hearing on April 5, 2006, and denied the motion.

The jury reached a verdict finding Thomas guilty with respect to the original counts four, eight, ten, and twelve. The jury could not reach a verdict with respect to the original counts two, three, nine, and eleven; the district judge later dismissed these counts on motion of the government. On July 26, 2006, the district court held a sentencing hearing and entered judgment, sentencing Thomas to two years of imprisonment and two consecutive three-year terms of supervised release and imposing a $10,000 fine on Thomas. Thomas filed a timely notice of appeal.

## II. ANALYSIS

### A. Speedy Trial Act

We review de novo the district court's legal conclusions in denying Thomas's motion to dismiss the indictment under the Speedy Trial Act ("the Act"), and we review for clear error the district court's factual findings. *United States v. DeJohn*, 368 F.3d 533, 538 (6th Cir.), *cert. denied*, 543 U.S. 988 (2004).

The Act provides that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). The Act, however, contains numerous exceptions that allow the district court to toll the seventy-day period. 18 U.S.C. § 3161(h). A defendant has the burden of establishing a prima facie case "by showing that he was not brought to trial within the seventy-day

4

period." *United States v. Gardner*, 488 F.3d 700, 717 (6th Cir. 2007). If the defendant establishes a prima facie case, then "the government has the burden of showing that, after taking into account time excludable from the seventy-day period, the defendant was brought to trial during the statutorily mandated period." *Id.*

Thomas and the government agree that the district court should count thirty-five non-excludable days from the indictment through August 12, 2005, pursuant to four consent orders granting continuances. While the government argues that fifty-one[1] non-excludable days elapsed between the indictment and the day Thomas filed her motion to dismiss the indictment, Thomas argues that 138 non-excludable days elapsed. Thomas disputes the district court's exclusion of time pursuant to five continuances (discussed *infra*) granted upon the government's motions on August 1, 2005; October 6, 2005; December 21, 2005; January 24, 2006; and March 6, 2006.

In laconic and formulaic orders, the district judge cited § 3161(h)(8)(B)(iv) as the rationale for each of the continuances and provided no further explanation beyond the statement that the delay would give the government additional time to prepare its case for trial. Section 3161(h)(8), also known as the "ends of justice" exception, mandates that in excluding time under this subsection, the district court must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." § 3161(h)(8)(A). Subsection 3161(h)(8)(B)(iv), cited by the district court, allows for the exclusion of time when "the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the

---

[1]The government had argued in its brief that forty-seven non-excludable days had elapsed, but at oral argument the government corrected that number and argued that fifty-one non-excludable days had elapsed.

5

reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

The requirement of a specific rationale does not mean that the district court must give its reasons contemporaneously with the granting of the continuance. In *Zedner v. United States*, 547 U.S. 489 (2006), the Supreme Court held that the district court must put on the record the findings justifying continuances and exclusion of time under § 3161(h)(8) "at the very least . . . by the time [it] rules on a defendant's motion to dismiss under § 3162(a)(2)." 547 U.S. at 507. "The best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance." *Id.* at n.7. Nevertheless, "the findings 'must actually have been the factors motivating [its] decision to grant the continuance.'" *United States v. Crawford*, 982 F.2d 199, 204 (6th Cir. 1993) (citation omitted); *see also Zedner*, 547 U.S. at 506 (stating that "the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance"). Thus, "[a]lthough a district court must conduct the balancing test prior to granting a continuance on the basis of the ends-of-justice exception, the district court may articulate its reasons after the fact." *United States v. Dunbar*, 357 F.3d 582, 595 n.4 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1099 (2005). When the district court properly explains its rationales, we do not disturb the district court's conclusion that an "ends of justice" exception warranted continuances unless we find that the district court abused its discretion. *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000). In *Zedner*, however, the Supreme Court held that harmless-error review is inappropriate when a district court fails to make express findings explaining the rationales for granting an "ends of justice" continuance and excluding time. 547 U.S. at 507-08.

At the April 5, 2006 hearing concerning Thomas's motion to dismiss, the district judge offered both the "ends of justice" exception, i.e. § 3161(h)(8), and the unavailable-witness exception, i.e. § 3161(h)(3)(A), as rationales for the continuances. Thomas's counsel challenged the first continuance requested by the government on the ground that a witness was experiencing a high-risk pregnancy in prison. Thomas argued that § 3161(h)(8)(C) prohibits the granting of an "ends of justice" delay "because of . . . failure to obtain available witnesses on the part of the attorney for the Government." J.A. at 151 (4/5/2006 Hr'g at 13) (quoting § 3161(h)(8)(C)). The district judge responded: "Well, this is not an available witness, though. If someone is going to have their health jeopardized and the Bureau of Prisons won't clear them to appear, then that is not an available witness. It is an unavailable witness." J.A. at 151-52 (4/5/2006 Hr'g at 13-14).

The district court also explained its rationales for granting the government's second and third requested continuances in October and December of 2005. The district court noted the arguments presented in the government's second motion requesting a continuance: the difficulties in separating the witness from her newborn and arranging for custody of the infant. The court then explained its decision: "[T]his is a circumstance in which there are issues relative to a person . . . about to deliver a baby. . . . [The continuance] was listed that it was to allow the government time to prepare, of course, and it was necessitated by the reasons set out in the motion." J.A. at 170 (4/5/06 Hr'g at 32). The court further explained: "What the court had done was to review the motion and initial the motion itself, adopting the factual basis for the resetting as set out in the motion. I must say that the reason articulated appears to have been an appropriate reason, and the government's request was reasonable." *Id.* Although the district judge agreed with the AUSA that the unavailable-witness exception, § 3161(h)(3)(A), may have also been a correct provision justifying the delay, he did not

7

retract his position that the reasons for the continuance constituted legitimate rationales under § 3161(h)(8)(B)(iv). With respect to the government's third motion for a continuance, the district court explained: "Unavailability of the marshal service to transport an individual because of their medical condition who is a material witness, it's certainly another reason that would allow the matter to be reset." J.A. at 159-60 (4/5/06 Hr'g at 21-22).

The court did not explain in its rationales for granting the fourth and fifth continuances in January and March of 2006 relating, respectively, to the government's request for time to review potential *Brady* and *Giglio* material and the scheduling conflicts created by an AUSA's planned absence as well as another witness's subpoena in Mississippi. The district judge did generally explain that:

> this is not a garden variety case, you have witnesses from these three cities in the United States, you have an in-custody person who had a complicated pregnancy, and then a witness that is being required to be in another location, it has been a complicated, complex matter in that regard, and I understand that. It is a 12-count case. It is not a simple case, and it is a little more difficult to get this type of case to trial, we all recognize that. I think the law contemplates that we will have some reasonable accommodation in terms of getting everybody here as a material witness . . . that resolves the issue. The court is going to deny the motion [to dismiss].

J.A. at 179-80 (4/5/06 Hr'g at 41-42).

Thomas argues that the district court did not make the requisite specific findings respecting the bases for its decisions to grant five continuances pursuant to the "ends of justice" exception, § 18 U.S.C. § 3161(h)(8). Thomas further argues that the district court's discussion of the unavailable-witness exception, § 3161(h)(3)(A), at the hearing on Thomas's motion to dismiss constituted an invalid retroactive explanation for the continuances. Although a district judge is only required to explain the basis for a continuance prior to ruling on a motion to dismiss an indictment, the reasons

8

cited must have been the genuine reasons the district judge had in mind at the time he or she granted the continuance. *Zedner*, 547 U.S. at 507-08; *Crawford*, 982 F.2d at 204. In this case, the district judge did not explain the reason for the continuances in any detail when he granted them but rather signaled his adoption of the government's logic by initialing the motions and issuing continuance orders that appear quite *pro forma*. The lack of contemporaneous explanations for the continuances makes it difficult for us to evaluate whether the district court's findings articulated at the hearing on the motion to dismiss were sincere and adequate as rationales. Although a more detailed explanation developing the record would have been helpful, we do find that the district judge technically complied with the requirements set forth in *Zedner* and Sixth Circuit precedent by explaining his reasons for granting the continuances before ruling on the motion to dismiss the indictment. We therefore reject Thomas's first challenge to the district court's decision to deny his motion to dismiss the indictment.

We also reject Thomas's second challenge to the district court's decision. We agree with Thomas that § 3161(h)(3)(A) would have been the subsection more precisely tailored to the district court's substantive reasons for granting the first three delays as well as the fifth delay. These delays were all related to the unavailability of witnesses, which does not fall exactly within the category of delay contemplated by § 3161(h)(8)(B)(iv): "reasonable time necessary for effective preparation, taking into account the exercise of due diligence." In *Howard*, however, we held that the district court did not abuse its discretion when it granted an "ends of justice" continuance upon the affidavit of a government attorney that a key witness was in the hospital due to a high-risk pregnancy and could not be present for the scheduled trial date. 218 F.3d at 562-63. The instant case presents a unique circumstance because the AUSA conceded at oral argument that the witness who was the

9

subject of the continuances never actually testified at trial; however, the AUSA asserted that this witness provided the information that led to the *Brady* and *Giglio* issue and ultimately resulted in the government's decision to dismiss counts one, five, six, and seven of the indictment. At the time that the district court ruled on the speedy trial motion, it could not have known that the witness would not ultimately prove critical to the trial. We conclude that the district court neither erred by failing to explain the basis for the five contested continuances nor abused its discretion when it granted the continuances and excluded intervening time pursuant to the "ends of justice" exception set forth under § 3161(h)(8) of the Act. We do reiterate, however, that the preferred practice of a more detailed explanation of the district court's reasoning when granting a continuance both assures the correctness of the decision and facilitates appellate review.

**B. Six-Level Enhancement Under § 2B1.1(b)(1)(D)**

Section 2B1.1(b)(1)(D) provides for a six-level enhancement when a monetary loss resulting from larceny, embezzlement, or other forms of theft is greater than $30,000 and less than or equal to $70,000. Thomas argues that the district court violated Fed. R. Crim. P. 32(i)(3) when it granted a six-level enhancement pursuant to § 2B1.1(b)(1)(D). Rule 32(i)(3)(B) provides that the district court: "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." "As a threshold matter, the defendant must actively raise the dispute during the sentencing hearing before the district court's duty to find facts arises." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007). "Once the defendant calls the matter to the court's attention, the 'court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a

preponderance of the evidence.'" *Id.* (citation omitted). "Rather the district court must affirmatively rule on a controverted matter where it could potentially impact the defendant's sentence." *Id.*

We review de novo the question of whether the district judge violated Rule 32(i)(3)(B) by failing to explain his factual determinations regarding the amount of loss. *White*, 492 F.3d at 414. The PSR stated that Thomas prepared eleven false claims, resulting in a total loss of $48,175. Thomas's attorney raised the requisite threshold dispute by arguing at the sentencing hearing that the district court should take into account only the four counts upon which the jury reached a verdict, resulting in a total loss of $9361. Had the district court based its calculations on the lesser loss value, then it would have increased the offense by only two levels. § 2B1.1(b)(1)(B). At the sentencing hearing, the government agreed that the court should not take into account the three substantive, fraudulent-claim counts dismissed upon the government's motion.[2] The government, however, argued that the court should take into account both the four counts resulting in conviction and the four counts upon which the jury could not reach a verdict. The government concluded that the loss on those eight counts amounted to $31,177. The court responded: "That looks correct. Okay. 31,000 plus, okay." J.A. at 221 (Sent. Hr'g at 36). After hearing the objection of the Thomas's attorney, the district judge explained: "The court will conclude that the response by the government and the probation officer is the position the court should take. The remaining claims were appropriately included pursuant to 1B1.3, and the calculation asserted by [the AUSA] is the calculation adopted by the court in the case. That resolves the issue of the relevant conduct." J.A. at 223-24 (Sent. Hr'g at 38-39).

---

[2]The district judge granted the government's motion to dismiss "original" counts one, five, six, and seven. Count one was the conspiracy count, and the other three dismissed counts related to the submission of fraudulent claims.

The district judge revealed his thought process regarding the amount of loss at the sentencing hearing only via a dialogue with the government. The spirit of Rule 32(i)(3)(B) and Sixth Circuit caselaw interpreting the Rule would favor a more detailed explanation by the district judge regarding his factual findings. Nevertheless, we conclude that the district judge complied with the minimum actions required by Rule 32(i)(3)(B). The record shows that he took into account both the arguments of Thomas's counsel and that of the government and agreed with the latter. The district judge did not summarily adopt the recommendation of the PSR because he based his finding that the loss lay between $30,000 and $70,000 on a number different than that presented in the PSR. Unlike the calculation in the PSR, the district judge did not take into account the three substantive, fraudulent-claim counts dismissed prior to trial, basing his calculations on eight rather than eleven fraudulent claims. Admittedly, the district judge did rely on the PSR's factual finding of the amount of loss per fraudulent claim. But Thomas did not object at the sentencing hearing to the PSR's calculation of loss per individual claim and objected only to the inclusion of the four counts on which the jury could not reach a verdict. We therefore conclude that the district court did not violate Rule 32(i)(3)(B) in granting a six-level enhancement pursuant to § 2B1.1, and we uphold the application of the enhancement.

## C. Two-level Enhancement Under § 3C1.1

Sentencing Guideline § 3C1.1 requires the district court to increase a defendant's offense level by two levels "[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct." In reviewing the district court's upward

12

enhancement of Thomas's sentence pursuant to § 3C1.1, we apply a trifurcated standard of review. We review the district court's factual determinations for clear error; the "determination that certain conduct constitutes obstruction of justice . . . de novo"; and the application of the enhancement de novo. *United States v. Baggett*, 342 F.3d 536, 540-41 (6th Cir. 2003). In reviewing the § 3C1.1 enhancement, we "evaluate defendant's testimony and statements in a light most favorable to the defendant." *United States v. Head*, 927 F.2d 1361, 1372 (6th Cir.), *cert. denied*, 502 U.S. 846 (1991).

In *United States v. Dunnigan*, 507 U.S. 87 (1993), the Supreme Court upheld the constitutionality of an upward enhancement under § 3C1.1 for perjury. The Court explained that the definition of perjury for purposes of a sentencing enhancement should be that which "has gained general acceptance and common understanding under the federal criminal perjury statute." *Id.* at 94. A witness violates the statute "if she give[s] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.*

Thomas argues that the district judge erred when he granted an enhancement under § 3C1.1 for perjury because he failed to make the requisite factual findings supporting the enhancement. We have established requirements for a district court's compliance with *Dunnigan*: "[T]he sentencing judge must identify for the record at least some specific instances of conflicting testimony and specify which portions of the defendant's testimony he finds materially perjurious." *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997). The district court must "either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002).

13

In this case, the district court discussed at the sentencing hearing why it had concluded that Thomas perjured herself on the stand. Referencing Thomas, the district judge explained: "She said I didn't use any false W-2s, . . . I only used the information that was provided by the clients. And the other testimony at trial was that, no, she did use false W-2s." J.A. at 196 (Sent. Hr'g at 11). Later in the sentencing hearing, the AUSA entered into the following exchange with a witness, Kimberly Walton:

> Q: Do you recall telling Special Agenct McCorkle and Special Agent Page that Trina Thomas said you could get hooked up on your taxes?
>
> A: I could come to Jackson Hewitt and get my taxes done, get my taxes hooked up.
>
> Q: Now, what did that mean to you, get hooked up?
>
> A: Get me a little bit more money than probably what I was going to get.
>
> Q: Than what you were supposed to get?
>
> A: Uh-huh, that's what it means to me.
>
> Q: And do you recall telling Special Agent McCorkle that you paid Trina Thomas a thousand dollars for that hookup?
>
> A: For her doing my taxes.

J.A. at 200-01 (Sent. Hr'g at 15-16).

The district court relied on this exchange between the AUSA and Walton, as well as Thomas's testimony at trial, to conclude that Thomas had committed perjury. The district judge explained his findings:

> Let's discuss first the obstruction of justice question. I think I understood Ms. Walton to say that she talked with the defendant about being hooked up, getting the taxes hooked up, getting more money back than was due, and she confirmed that she had told the agent that she paid Ms. Thomas a thousand dollars. That does seem to support the obstruction of justice enhancement. Additionally, there was testimony

14

at trial, and that transcript has been filed, but in a very, very summary way, Ms. Thomas testified, among other things, that she never got paid any commission in excess of the amount that she would normally be paid at the company. That's contradicted by the testimony of Ms. Walton and by testimony of witnesses in the case, that she never got a W-2—false W-2 from anybody, or for that matter, prepared one. That was also contradicted by testimony at trial. She testified that she did not take any money from Patricia Graham. There was proof that she did, and I don't know that that's necessary to resolve that issues, because we have the other questions that seem to be—that seem to be resolved adversely to the defendant. She said that no W-2s look strange to me. They all look like W-2s, but, of course, when we saw the W-2s at trial, they were suspicious to anyone, or at least some of them were. She did testify that she did not call to verify any W-2s. She said I prepared these taxes based on what they gave me. That was inconsistent with what the witnesses testified to. I have simply gone through a very brief summary of the testimony, but really it is—based on any of these, there would be a basis for the enhancement, and the record fully supports the enhancement in this case.

J.A. at 219-20 (Sent. Hr'g at 34-35).

Thus, the district judge discussed three specific instances in which Thomas's testimony contradicted other testimony, which the district judge believed. The district judge concluded that Thomas lied when she said that she never received pay for submitting false tax returns; that she never received a falsified W-2 in the course of tax preparation; and that she never prepared tax returns using anything beyond the materials given her by her clients. The record shows that the district judge identified specific instances of conflicting testimony and pointed to the specific portions of Thomas's testimony that he deemed perjurious.

Under our precedent interpreting *Dunnigan*, the district court after discussing his findings ideally would have explained why the facts satisfied each element of perjury: false testimony, materiality, and willfulness. In accord with our precedent, however, the district court made the factual conclusions required as predicates to a finding of perjury. First, the district court found that Thomas submitted false testimony. Second, as a legal matter, we conclude that the issues about

15

which Thomas lied are ones material to a legal determination that she violated 18 U.S.C. § 287. *United States v. Seymour*, 38 F.3d 261, 264 (6th Cir. 1994) (holding that where a district court's findings "encompass all elements of perjury except materiality, *Dunnigan* does not require a remand because materiality is a question of law"). The most difficult question is whether the district court's factual findings encompass the factual predicates necessary for a finding that Thomas gave false testimony willfully rather than as a result of confusion or mistake. The district court did not explicitly state but rather implied that Thomas's statements were willful. In the circumstances of this case, we determine that the district court's factual findings are sufficient for a factfinder to conclude that Thomas lied intentionally. Because the findings constitute the necessary factual predicates to all three elements of perjury, we affirm the district court's two-level enhancement pursuant to § 3C1.1.

**D. Supervised Release**

On appeal, "[t]he government concede[d] that the district court's imposition of consecutive terms of supervised release in this case was plain error . . . and ask[ed] that the court vacate the supervised release portion of the sentence and remand for resentencing." Plaintiff-Appellee Br. at 49-50.

**E. Fine Under § 5E1.2(a)**

Section 5E1.2 states that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." § 5E1.2(a). Because Thomas objected to the district court's imposition of a $10,000 fine at the sentencing hearing, we review the imposition of the fine for abuse of discretion. *United States v. Blackwell*, 459 F.3d 739, 770-71 (6th Cir. 2006), *cert. denied*, --- U.S. ---, 127 S. Ct. 1336 (2007).

16

The district court's finding regarding whether a defendant is able to pay is a factual finding that we review for clear error. *United States v. Hickey*, 917 F.2d 901, 906 (6th Cir. 1990).

The defendant bears the burden of proof regarding her inability to pay a fine. *United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001). In determining the ability of a defendant to pay the fine, the district court must assess "(1) the defendant's income and earning capacity, (2) her financial resources, (3) the burden on the defendant and her dependents, (4) whether restitution is ordered and the amount of restitution, (5) the need to deprive the defendant of illegal gains, and (6) the need to promote respect for the law." *United States v. Jackson-Randolph*, 282 F.3d 369, 387 (6th Cir. 2002) (citing 18 U.S.C. § 3572(a); U.S.S.G. § 5E1.2(d)). The Sixth Circuit has not resolved the question of whether the district court must make explicit findings on the record regarding its consideration of these factors. *Id.* When a PSR raises the question of an inability to pay and the district court does not show that he has considered the defendant's financial capacity and other relevant factors, however, we have remanded the case for further consideration of these issues. *United States v. Hopper*, 941 F.2d 419, 423 (6th Cir. 1991).

The PSR reviewed Thomas's ability to pay a fine. Thomas had $9.74 in a savings account; $2,400 in unsecured debts; a monthly cash flow of $0; and monthly expenses of $355, which she met by pooling resources with her daughter. She has additional debts in the amount of $56,569. Thomas also supports four minor children, one adult child, and four minor grandchildren who live with her. Thomas had received annual wages for the years 2000 to 2005, ranging from $4,271.27 in 2000 to $26,149.91 in 2005.

The district court addressed the rationales for the fine at the sentencing hearing. The district judge considered the fine in relation to the seriousness of the offense, pursuant to § 5E1.2, and

17

concluded: "[T]hese types of crimes should not have a financial benefit to anybody. . . . Ms. Thomas made a financial gain in these cases. . . . [A]nd a fine of $10,000 will achieve the objective of making it clear that this conduct does not pay." J.A. at 240-41 (Sent. Hr'g at 55-56). The district judge also considered Thomas's earning capacity and financial resources:

> She has the ability to pay. All she has to do is get a job. She has got a GED, she is obviously a bright person. She has had a number of jobs in the past . . . . She reported specialized skill and training in cosmetology. She has reportedly completed a supervisory building engineering training class through her prior employment through the Memphis City Schools. She was employed by the School Board for almost, I think, in excess of four years and was paid $1104 biweekly, and she actually resigned from the employment due to the instant offense as opposed to continuing to work, so she could pay things back, she simply quit. She had previously reported employment at Sanders Catering. She reported work at Dodge's Store, she reported work at Grave Realty. She was a full-time receptionist and paid a [sic] $150 a week. She quit that employment. She, of course, worked at Jackson Hewitt. The defendant has plenty of ability to work.

J.A. at 242 (Sent. Hr'g at 57). Finally, the district court stated that Thomas could petition within the ten-day period following judgment to reduce the fine to allow for the amount of restitution if any restitution were to be awarded during the ten-day period.

Thomas argues "that the court's observation that the defendant retained the ability to work not only fails to address the factors in § 5E1.2 of the Guidelines, but it also does not explain how she would ever be able to pay the fine [in] light of the financial encumbrances which she already faced at the time of sentencing." Defendant-Appellant Br. at 54. Under applicable precedent, however, Thomas has the burden of proving that she will not be able to pay. We are mindful of the heavy burden that the fine may pose to Thomas who faces significant debts, cares for numerous dependents, and was not working immediately prior to her conviction. The district court, however, concluded that Thomas's education and past work experience establishes that she will be able to get a job and

18

pay the fine in the future. We are not persuaded that the district court's factual findings regarding Thomas's ability to pay the fine are clearly erroneous, and we conclude that the district court did not abuse its discretion in imposing the fine.

Thomas further argues that the district court violated Fed. R. Crim. P. 35 in making the fine provisional by allowing Thomas to petition to reduce it within a ten-day period and that the district court inappropriately made the fine, which is paid to the government, stand in for restitution to a private victim. At oral argument both parties conceded that the district court never ordered restitution, and the district court did not adjust the fine pursuant to Rule 35. We therefore decline to address Thomas's argument regarding Rule 35.

### III. CONCLUSION

For the reasons explained above, we **REVERSE** the judgment of sentence with respect to the term of supervised release and **REMAND** for resentencing regarding only the supervised-release term. We **AFFIRM** the judgment of conviction and sentence in all other respects. Specifically, we uphold the district court's denial of Thomas's motion to dismiss the indictment; the district court's sentencing enhancements under § 2B1.1(b)(1)(D) and § 3C1.1; and the district court's imposition of a $10,000 fine.