NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0108n.06

Nos. 13-3950/3951

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 05, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Northern |
| | ) | District of Ohio |
| DAMIEN TREMONT RUSS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____/

Before: GUY, ROGERS, and DONALD, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** Damien Russ was convicted for a second time of one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), which resulted in the revocation of the supervised release portion of a prior sentence for possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). In these consolidated appeals, Russ contends that the district court violated his due process rights by vindictively imposing longer sentences for having succeeded in his first appeal. Russ also asserts procedural error in the imposition of an obstruction-of-justice enhancement and challenges the substantive reasonableness of his sentence for the § 922(g)(1) conviction. Finally, Russ contends that the evidence was not sufficient to support a finding that he possessed the loaded firearm in question. For the reasons that follow, we affirm.

**I.**

Russ, a convicted felon on supervised release, fled when confronted by two law enforcement officers in the rear parking lot of the Powerhouse Bar and Grill in the early morning hours of July 10, 2010. As Russ pushed away and ran, the officers saw a shiny object at his waist that one of them recognized to be a firearm. They chased Russ, lost sight of him, and pulled him from some bushes a few minutes later. No firearm was found with Russ, but a silver .38 caliber revolver with an obliterated serial number and six rounds of ammunition was recovered less than ten minutes later in some brush along the path Russ had taken when officers lost sight of him. A one-count indictment charged Russ with being a felon in unlawful possession of a loaded firearm—namely, a Rossi .38 caliber revolver with an obliterated serial number and six rounds of ammunition—in violation of 18 U.S.C. § 922(g)(1).

Defendant's motion to suppress evidence was denied, and trial was conducted over several days in May 2011. Russ did not testify, and the jury found him guilty as charged. The district court varied upward and sentenced Russ to 97 months of imprisonment and three years of supervised release. Based on that conviction, the district court also revoked Russ's prior supervised release and imposed a consecutive 18-month term of imprisonment to be followed by the remaining term of supervised release. This court affirmed the denial of the suppression motion, but reversed both the felon-in-possession conviction and the revocation of his supervised release for reasons unrelated to this appeal. *See United States v. Russ*, 508 F. App'x 377 (6th Cir. 2012).

On remand, Russ obtained new court-appointed counsel and elected to testify at the trial conducted in April 2013. The jury returned a verdict of guilty, and Russ filed a pro se motion for a new trial asserting claims of ineffective assistance of counsel. At sentencing, Russ also

insisted that he be allowed to represent himself, and defense counsel withdrew. Defendant argued for a downward departure or variance and the government moved for an upward departure or variance as each had done after the first trial. But, the government also sought an additional two-level enhancement for obstruction of justice based on Russ's testimony during the second trial. *See* U.S. SENTENCING GUIDELINES MANUAL (USSG) § 3C1.1 (2012). Finding the enhancement applied and granting an upward variance to the statutory maximum, the district court sentenced Russ to 120 months of imprisonment to be followed by a three-year term of supervised release. Revoking his prior term of supervised release, the district court imposed a consecutive sentence of 30 months of imprisonment and terminated the remaining period of supervised release. New counsel was appointed, and these consolidated appeals followed.

## II.

To convict Russ of violating § 922(g)(1), the government was required to prove beyond a reasonable doubt (1) that he had a previous felony conviction, (2) that he knowingly possessed the firearm or ammunition specified in the indictment, and (3) that the firearm or ammunition traveled in or affected interstate commerce. *See United States v. Grubbs*, 506 F.3d 434, 439 (6th Cir. 2007). The prior felony conviction was established by stipulation and acknowledged when Russ testified at trial, and Russ has not challenged the adequacy of the evidence showing that the firearm and the ammunition had traveled in interstate commerce. Instead, Russ argued that the government failed to prove that he possessed the loaded firearm in question.

## A.

There was testimony that in the early morning hours of July 10, 2010, Deputy U.S. Marshal William Boldin and Lordstown Police Detective Chris Bordonaro were partners patrolling in high-crime areas of Warren, Ohio, as part of the Violence and Gun Reduction and

Interdiction Program (V-GRIP). At roughly 2:30 a.m., Boldin and Bordonaro responded to a call to assist other officers with a large fight taking place in the front parking lot of the Powerhouse Bar and Grill on Mahoning Avenue in Warren, Ohio. They arrived in an unmarked dark-colored Dodge Charger, stopped near the front entrance, and assisted with dispersing the crowd. They resumed patrol and, at approximately 3:00 a.m., Boldin and Bordonaro drove into the smaller, well-lit rear parking lot of the Powerhouse Bar where they saw a man later identified as Russ walking from the employee entrance toward a parked car.

Boldin testified that he exited the Charger wearing tactical gear, a bulletproof vest, and his badge on a chain around his neck. He approached Russ, who appeared startled and extremely nervous, began turning his head to the left and right, and stepped back with one leg into a defensive posture. Boldin asked if everything was "okay" or "all right," and Russ answered emphatically, "No." As Boldin stepped toward him, Russ swung his left arm up into Boldin's arm and chest, knocked Boldin off balance, and began running away. Turning to chase him, Boldin saw Russ holding his right hand at his waistband where "there was a silver shiny object." Boldin testified that he almost immediately recognized the shiny object to be a firearm; yelled out, "Gun, gun"; and announced on his police radio that they were chasing a subject with a gun north on Mahoning Avenue.

Bordonaro, who observed the encounter from approximately fifteen feet away, was wearing tactical gear, a gun belt, a ballistic vest, and an external vest carrier that said "POLICE" across the back and front. Bordonaro heard Boldin say something to Russ and saw Russ swing his arm up and knock Boldin off balance. Bordonaro also "caught a glimpse of something shiny" in the defendant's midsection area, but could not say that it was a firearm. Bordonaro deployed his taser, which did not stop Russ.

Bordonaro testified that he kept Russ in view as they chased him across Mahoning Avenue, through a parking lot, and toward some houses on Freeman Street. Bordonaro did not see Russ drop anything as he ran, and did not see anything in his hands. When Russ ran between two houses, Bordonaro lost sight of him and began setting up a perimeter with the assistance of other officers. They found Russ within a few minutes, lying in some bushes by the porch of a nearby abandoned house. No firearm or other shiny object was found with him.

Warren Police Sergeant Sherrey McMahon testified that she was working with her trained police dog outside the Powerhouse Bar and responded to Boldin's call. Russ was already in custody when McMahon arrived, but she was asked to conduct a search of the area for items that he might have thrown. When McMahon began to search where officers had lost sight of Russ, the dog began tracking a human scent, followed it between the houses and around the corner of a garage, and alerted to indicate that there was an article in the brush.

Less than ten minutes after locating Russ, officers found a silver revolver with a brown handle lying in brush a few feet from the path Russ had taken during his flight. The firearm was still dry, although the ground and vegetation around it was wet because it had rained on-and-off all night. The firearm and ammunition were not fingerprinted or submitted for DNA analysis, but later examination determined that the firearm had an obliterated serial number, was operable and free of rust, and had a value of approximately $250.

Russ testified that he had been working that night as a photographer at the Powerhouse Bar, with the assistance of his girlfriend. After a fight caused the bar to close early, Russ used the back door to take his equipment out to his girlfriend's car parked in the rear parking lot. He was aware that there were police out front, but did not go out that way. Russ said he became nervous when he saw a dark-colored Charger with tinted windows enter the parking lot, and told

his girlfriend to get into the car.

Russ testified that the Charger pulled up close and a "guy jump[ed] out in an all-black hoodie or rain jacket," charged at him, and grabbed him while yelling something like "'got your black ass.'" Russ said he "probably slapped [the man's] hands off . . . and ran." Russ acknowledged seeing a second man approaching, but testified that he did not know that either man was law enforcement. Russ explained that he fled out of instinct and fear that they were attempting to kidnap or rob him. Russ specifically denied having a firearm with him that night, but said he had a keychain with keys, a bottle opener, and an "R2-D2" figure that he lost while fleeing and never recovered.

Russ said he ran until he got "caught up'" in some bushes, where he was found about five minutes later. Two nearby residents testified that they were awakened by the commotion, but neither saw what happened. One of them said the path where the firearm was found was regularly used day and night as a cut-through by people who "looked like drug addicts and prostitutes."

**B.**

Ordinarily, an attack on the sufficiency of the evidence is reviewed *de novo*. *See United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010). When the issue has not been preserved for appeal, however, our review is more limited. Here, defense counsel moved for judgment of acquittal at the close of the government's proofs, but presented testimony and rested without renewing the motion at the close of all the evidence. *See* FED. R. CRIM. P. 29(a); *United States v. Kennedy*, 714 F.3d 951, 957 (6th Cir. 2013). Nor did defendant file a motion for judgment of acquittal within fourteen days after the verdict. *See* FED. R. CRIM. P. 29(c); *United States v. Kuehne*, 547 F.3d 667, 696 (6th Cir. 2008). Russ argues in reply that his pro se motion for new

trial should be construed as having preserved this claim. Even viewed liberally, however, Russ's motion for new trial asserted claims of ineffective assistance of counsel that did not attack the sufficiency of the evidence to support the jury's verdict. When, as here, the sufficiency-of-the-evidence claim has been forfeited, we review for a manifest miscarriage of justice and may "'only reverse a conviction if the record is devoid of evidence pointing to guilt.'" *Id*. at 697 (citation omitted). The record here is not devoid of such evidence.

On appeal, Russ argues that the government did not prove that he had a connection to the recovered firearm since no one saw him discard it, the police dog could not differentiate between human scents, the firearm had an obliterated serial number, and no fingerprint or DNA analysis was performed. Absent such evidence, Russ argues it is plausible that the firearm was hidden or discarded by someone other than him, since it was found along a regularly used cut-through not long after an unruly crowd had been dispersed from outside the Powerhouse Bar. This possibility was presented at trial, but so was evidence supporting an inference that it was Russ who had discarded the firearm where it was found.

Boldin's testimony provided direct evidence that Russ had actual possession of a firearm when he fled. Circumstantial evidence of possession included testimony that Russ fled from the officers, was not seen dropping anything before he went between the houses, and was found in nearby bushes a few minutes later without a firearm or any other shiny object. The still-dry firearm was found less than ten minutes later in the wet brush along the path Russ had taken after officers lost sight of him. Because there was evidence that Russ possessed the loaded firearm in question, the record is not devoid of evidence pointing to his guilt. Both the conviction and revocation of supervised release are affirmed.

**III.**

Russ argues that the harsher sentences he received after his second trial were the product of judicial vindictiveness. Generally, a constitutional challenge is a question of law that is reviewed *de novo*; but, failure to present a constitutional challenge at the time of sentencing restricts our review to plain error. *See United States v. Droganes*, 728 F.3d 580, 591 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 2287 (2014); *United States v. Johnson*, 715 F.3d 179, 182 (6th Cir. 2013). We need not decide whether the various objections and arguments made by Russ at sentencing raised a concern that harsher sentences were being imposed because he had prevailed on appeal; even on *de novo* review, this claim lacks merit.

**A.**

Due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794, 802-03 (1989). To assure the absence of vindictive motivation, *Pearce* provides that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id*. at 726. This has been recognized as giving rise to a presumption of vindictiveness in certain circumstances. *See Smith*, 490 U.S. at 798; *see also Goodell v. Williams*, 643 F.3d 490, 498-500 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1036 (2012). There is no question that when, as here, a conviction is reversed on appeal and the same judge imposes a more severe sentence after a new trial, a presumption of vindictiveness arises.

This presumption of vindictiveness "may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin*, 457 U.S. 368, 374

(1982). Such information includes any conduct or event coming to the judge's attention after the first sentencing that may throw "new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" *Wasman v. United States*, 468 U.S. 559, 570-71 (1984) (citation omitted); *see also Texas v. McCullough*, 475 U.S. 134, 140 (1986) (clarifying that *Pearce* requires no more than "an on-the-record, wholly logical, nonvindictive reason for the sentence"). Consistent with these principles, this court has required that the judge have articulated nonvindictive reasons that "'have at least something to do with conduct or an event, other than the appeal, attributable in some way to the defendant.'" *United States v. Jackson*, 181 F.3d 740, 746 (6th Cir. 1999) (citation omitted); *see also Gauntlett v. Kelley*, 849 F.2d 213, 217 (6th Cir. 1988).

## B.

Russ contends that during the second sentencing hearing, the district judge "displayed impatience" with his pro se arguments; "excoriated" him for firing another attorney and alleging claims of ineffective assistance of counsel; and "chastised" him for repeating his tactic of shifting blame to court-appointed counsel and others. Our examination of the record, however, does not reveal the kind or level of irritation or frustration that Russ suggests was directed at him. Rather, the district judge engaged Russ, invited him to make any objections, and allowed him leeway in his arguments. None of the court's efforts to redirect Russ's pro se arguments toward issues that would be relevant to sentencing was improper. Nor does the record indicate vindictive motivation when the district judge responded to Russ's complaints about his court-appointed attorneys' performance and viewed them as part of a pattern of shifting blame to

others and failing to take responsibility for his own conduct.  Since a presumption arises in this case, however, Russ need not prove actual vindictiveness to prevail.[1]

Together, Russ's sentences of incarceration are a total of 35 months longer than the sentences imposed after his first trial.  That is, the 120-month sentence imposed for the felon-in-possession conviction is 23 months longer than the sentence imposed initially, while the consecutive 30-month sentence imposed for the supervised-release violation is 12 months longer than the consecutive sentence imposed initially.  In light of the reasons articulated for the sentences imposed before and after the appeal, the presumption is rebutted by objective information in the record that justified the increased sentences.

First, with respect to his § 922(g)(1) conviction, Russ seems to argue that the increase cannot be justified because the upward variance was based on information that had previously been considered.  It is true, as Russ points out, that no new information about the offense or his prior criminal history was uncovered between the first and second sentencing.  What Russ ignores, however, is that the upward variance was not the reason for the increase in this sentence.  Rather, the increase is attributable to the two-level enhancement for obstruction of justice that resulted in a higher applicable Guidelines range.  Since Russ did not testify at his first trial, there is objective information – his perjurious testimony at the second trial -- justifying the increased sentence.[2]

---

[1]Russ also complains that the district judge "inappropriately questioned" how it was that Russ could have purchased the photography equipment when he had no reported employment.  Russ interprets the comment to imply that he had engaged in other illicit behavior.  However, the comment was made in response to Russ's final argument that his educational and entrepreneurial efforts had not been acknowledged.  This exchange occurred after sentence had already been imposed, and does not suggest vindictiveness for having succeeded on appeal.

[2]At the first sentencing, the district judge found the base offense level to be 20, added four levels because the firearm had an obliterated serial number, and determined the criminal history for this offense to be a category III. This resulted in an initial Guidelines range of 63-78 months, but the district judge varied upward two offense levels to produce a new Guidelines range of 78-97 months and Russ was sentenced to a 97-month term of imprisonment. At the second sentencing, the district judge imposed an additional two-level enhancement for obstruction of justice.

Second, in imposing sentence for the supervised-release violation, the district judge expressly relied on the reasons already articulated for the § 922(g)(1) conviction. The increased sentence is also explained by confusion in the calculation of the applicable Guidelines range during the first sentencing hearing. Specifically, the district judge was erroneously advised that Russ's relevant criminal history was a category III (instead of IV), which resulted in an incorrect determination that the Guidelines range was 18-24 months (instead of 24-30 months). Using this lower Guidelines range, the district judge gave his reasons for the sentence and stated his intention to impose a sentence at the "low end" of that range. Only then was the error corrected. Referring to the reasons already stated, the district judge adhered to the 18-month sentence and varied downward in order to do so. The confusion was not repeated at the second sentencing hearing, and the higher Guidelines range was correctly identified from the outset.[3]

Since objective information justifying the increased sentences and reasons unrelated to the successful appeal appear in the record, the presumption of vindictiveness is rebutted and no due process violation has been shown.

**IV.**

Russ asserts procedural error in the application of the obstruction-of-justice enhancement and challenges the substantive reasonableness of the above-Guidelines sentence imposed for the felon-in-possession conviction. We affirm.

---

This produced a higher Guidelines range of 78-97 months, but the district judge varied upward the equivalent of two offense levels corresponding to a new Guidelines range of 97-121 months and Russ was sentenced to the statutory maximum 120-month term of imprisonment.

[3]The confusion arose because the relevant criminal history is determined at the time of the initial imposition of supervised release (not the violation), which in this case included convictions that were otherwise too old to be counted. *See* USSG § 7B1.4(a).

**A.**

The obstruction-of-justice enhancement applies when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," so long as that conduct relates to the offense of conviction or a closely related offense. USSG § 3C1.1. When a defendant appeals the enhancement, the district court's findings of fact are reviewed for clear error, while both the determination that the conduct constitutes obstruction of justice and the application of the enhancement are reviewed *de novo*. *See United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012).

One of the ways a defendant can obstruct justice is by committing perjury, which "occurs when a witness, testifying under oath or affirmation, 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Lawrence*, 308 F.3d 623, 631-32 (6th Cir. 2002) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). To protect a defendant's constitutional right to testify, a district court applying an enhancement under § 3C1.1 for perjury must "1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury." *Id*. at 632.

The government requested the enhancement based on "Mr. Russ's testimony during the trial, his description of his initial encounter with the police, his denial of having a firearm, and his denial of seeing any police vehicles or uniformed police officers." (Page ID # 2572.) Agreeing with the government that Russ's testimony was patently false in a number of respects, the district judge specifically identified as false Russ's testimony contradicting the evidence that

he "was confronted by law enforcement wearing clothing that clearly indicated they were law enforcement officers."

Russ testified that the Charger pulled up close and a man wearing an all-black hoodie or rain jacket jumped out and grabbed him. Russ said he saw another man approaching, but did not recognize either man to be law enforcement. Instead, Russ explained that he fled out of fear of being a victim of a crime—not because he had a firearm with him. In contrast, Boldin said he was wearing a bulletproof vest over his "US MARSHAL" shirt, and that he was also wearing his badge on a chain around his neck. Bordonaro testified that he was wearing tactical pants, a gun belt, a ballistic vest, and a shirt with an external vest carrier that had "POLICE" visible in large lettering on the front and back. Although the Charger was not marked and the lettering on Boldin's shirt may not have been visible, Russ was close enough to Boldin to have knocked him off balance when he fled, and Bordonaro was approaching from approximately fifteen feet away.

Crediting the officers' testimony about their appearance, the district judge found Russ's testimony to be false. The district judge also found, as is required, that his testimony was willfully false and not the result of confusion, mistake, or faulty memory. Russ has not shown that either factual finding is clearly erroneous. That leaves only the question of materiality, about which the district judge hinted but failed to make a specific finding. When, however, a district court's findings encompass all of the factual predicates for a finding of perjury, "we will not remand a case back to the district court solely for a finding as to materiality because we may answer such a question of law ourselves." *United States v. May*, 568 F.3d 597, 607 (6th Cir. 2009); *see also United States v. Thomas*, 272 F. App'x 479, 488 (6th Cir. 2008). As a legal matter, the testimony found to be willfully false was also material because it was relevant to the question of whether Russ knowingly fled from law enforcement to avoid discovery of the firearm

that he was charged with possessing. *See* USSG § 3C1.1 n.6. The district court did not err in the application of the enhancement under § 3C1.1.

**B.**

"A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). The substantive reasonableness of a sentence is reviewed under the deferential abuse-of-discretion standard, regardless of whether the sentence is within or outside the advisory Guidelines range. *See Gall v. United States*, 552 U.S. 38, 46-47, 51 (2007).

The starting point for the substantive-reasonableness review is the properly calculated Guidelines range, which in this case was 78-97 months of imprisonment (based on a total offense level of 26 and a criminal history category of III). The district court recognized its authority to depart or vary from that range, rejected Russ's arguments for a below-Guidelines sentence, and agreed with the government that an above-Guidelines sentence was warranted. After addressing all the relevant § 3553(a) factors, the district court fully articulated the reasons for imposing an upward variance of 23 months to the statutory maximum of 120 months of imprisonment. *See* 18 U.S.C. § 3553(a).

Russ contends that the sentence is substantively unreasonable because it was based on consideration of impermissible factors. The record does not support his claim that the district court varied upward to penalize him for succeeding on appeal, choosing to represent himself, or raising claims of ineffective assistance of counsel. Otherwise, it was not improper to consider,

among the other factors relevant to his history and characteristics, that Russ had demonstrated a lack of insight into his actions and a failure to take responsibility for his conduct.

Further, in related arguments that attack the extent or degree of the variance, Russ argues that imposition of the statutory maximum sentence was disproportionate to his "garden-variety" possession offense and created unwarranted disparities between offenders because he was not among the "worst of the worst" offenders. To be substantively reasonable, a sentence "must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *See United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citation & internal quotation marks omitted). Also, in general, "'a major departure should be supported by a more significant justification than a minor one.'" *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) (citation omitted). Although Russ's conduct was not especially egregious, the district court explained in no uncertain terms that the variance was warranted by the defendant's history and characteristics.

The district court acknowledged Russ's difficult upbringing and his history of substance abuse problems, but also found that (1) Russ had a long criminal history that started at a young age and continued throughout his adult life, (2) Russ had not responded to intensive probation, and (3) Russ's criminal history category was significantly underrepresented by the Guidelines calculation. Also, the district court explained that it was not just the extent of that prior conduct, but the assaultive and violent nature of that conduct that was underrepresented. Finally, the district court emphasized that Russ committed this offense despite having served a long federal sentence for the prior drug conviction. These factors were relevant to defendant's history and characteristics, to evaluating the need for adequate deterrence, and to determining how best to promote public safety. With due deference to the district court's determination that the § 3553(a)

factors, as a whole, justified the extent and degree of the variance in this case, imposition of the statutory maximum sentence was not substantively unreasonable. *Gall*, 552 U.S. at 51 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").

**AFFIRMED**.